# Brown *v.* Scott.

*Bill in Equity for Foreclosure of Mortgage.*

1. *Set-off against note.*—A demand against an intermediate holder of a promissory note is not available as a set-off to the maker, either at law or in equity, unless founded on an agreement supported by a new consideration, in pursuance of which the intermediate holder procured it, or which was entered into by the parties while it was in his hands; and this rule applies to a non-commercial note transferred after maturity.

2. *Proof of payment.*—The *onus* of proving payment is on the party who asserts it; and if the evidence leaves the fact in doubt and uncertainty, he must fail.

[Brown v. Scott.]

3. *Transfer of note as collateral security; set-off in equity.*—When a note secured by mortgage is purchased by one of the heirs of the deceased mortgagor, and transferred as collateral security for his own debt, and the transferree files a bill to foreclose, he is only entitled to recover the amount of his debt, with attorney's fees and costs; and the transferror being indebted to the estate of the mortgagor, the other heirs may by cross-bill set off that indebtedness against the balance due on the mortgage debt.

APPEAL from the Chancery Court of Calhoun.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 10th March, 1886, by Amelia C. and Lula D. Brown, the partners composing the firm of Rowan, Dean & Co., and Isaac L. Swan as trustee, against W. S. Scott, Winfield Scott and others, heirs at law of William Scott, deceased; and sought the foreclosure of two mortgages, or deeds of trust in the nature of mortgages, executed by said William Scott to Swan as trustee, to secure two notes due to Rowan, Dean & Co. The mortgages and secured notes were transferred by Rowan, Dean & Co., for valuable consideration, to said Winfield Scott; and were afterwards transferred by him, as collateral security, to said Amelia C. and Lula D. Brown. The defendants, except Winfield Scott, insisted in their answer that his purchase of the notes and mortgages was made for the benefit of the mortgagor's estate, and operated a payment and extinguishment of the debts; and they filed a cross-bill, alleging that he was indebted to the estate, and seeking to set off that indebtedness against the mortgage debt. The chancellor overruled a demurrer to the cross-bill, but seems to have granted no relief under it; and on final hearing, on pleadings and proof, he dismissed the original bill. The complainants appeal, and assign these decrees as error.

BROTHERS, WILLETT & WILLETT, for the appellants, cited *Alston v. Alston,* 34 Ala. 16; *Goodwin v. McGehee,* 15 Ala. 232; *Davis v. Cook,* 65 Ala. 622; 7 John. Ch. 252; 54 Ala. 688; 23 Ala. 219; 1 Ala. 43; 50 Ala. 10; 67 Ala. 549.

JOHN H. CALDWELL, and CALDWELL & JOHNSTON, *contra,* cited *Harrison v. Hicks,* 1 Porter, 423; *Ross v. Pearson,* 21 Ala. 473; *Prater v. Stinson,* 26 Ala. 456; 3 Rand. Com. Paper, § 1435; *Mount v. Vaughan,* 45 Ala. 134; *Goldthwaite v. Nat. Bank,* 67 Ala. 549; *Sims v. Sampey,* 64 Ala. 230; *Atkins v. Knight,* 46 Ala. 539; 7 Porter, 543.

CLOPTON, J.—Appellants, as transferrees, seek by the bill to foreclose two deeds of trust in the nature of mortgages, which were executed by William Scott,—one on January 18, 1875, and the other April 7, 1877, to secure the payment of two notes made by him to Rowan, Dean & Co. The grantor died in 1878. On May 9, 1879, Rowan, Dean & Co. transferred the deeds of trust, and delivered the notes, to Winfield Scott, who transferred them, June 23, 1882, to complainants, as collateral security for borrowed money. The execution of the conveyances, the justness of the debts, and the transfers, are not controverted; and if they were, are clearly proved.

Winfield Scott, who is a son and one of the heirs of the grantor, was indebted to his father at the time of his death, for money paid as his surety. The other heirs of William Scott seek by cross-bill to set off the indebtedness of Winfield Scott against the notes secured by the deeds of trusts—a demand against an intermediate holder. Courts of equity, there being no special and intervening equities, adopt and follow the rules at law in relation to set-off. The well-settled and uniform construction of the statute is, that the maker of a note will not be allowed to set off a demand against an intermediate holder, unless founded on an agreement supported by a new consideration, in pursuance of which the intermediate holder procured the note, or which was entered into by the parties while it was in his hands.—*Goldthwaite v. Nat. Bank*, 67 Ala. 549. Though the transferree of a note not commercial takes it subject to all the equities existing between the original parties, he does not take it subject to any equities which may arise between the maker and an intermediate holder. This settled and uniform construction of the statutes is essential to the transfer of such paper unobstructed by risks other than the original equities between the original parties. The cross-bill alleges no agreement founded on a new consideration, nor any special or intervening equity, which withdraws their demand from the operation of the general rule.

The defendants set up the further defense, that the transactions by which Winfield Scott obtained the transfer of the notes and deeds of trusts, operated a payment and extinguishment. It satisfactorily appears that Winfield Scott used his own funds to pay Rowan, Dean & Co., and took a written transfer of the deeds of trust with the delivery of the notes. These facts, unexplained, indicate a purchase. W. J. Scott,

who was the administrator and also an heir of William Scott, was present when the transfer was made. His testimony, as to what was said in respect to the character of the indorsements which should be put on the deeds, is denied by Winfield Scott, who testified that he said he wanted the papers transferred to him; and is unsupported by Dean, who did not remember the words, but did remember that Winfield Scott said, in substance, he wanted the indorsements to show that the indebtedness was paid by him. It seems that, if payment and satisfaction were intended, the notes and the deeds of trust, instead of being transferred to Winfield Scott as a subsisting demand, would have been surrendered to the administrator, who went with him, and was present at the time of the transaction, but made no claim to have the papers cancelled and surrendered to him. If they were discharged, he was entitled to their possession.

The theory of payment, in satisfaction of the notes and extinguishment of the deeds of trust, is inconsistent with the subsequent acts of the parties. The notes and deeds of trust were left uncancelled in the possession of Winfield Scott, and in that condition remained in his possession until he transferred them to complainants. The administration of the estate of William Scott was finally settled in January, 1886, and no demand for the papers was made, prior to, at the time of, or subsequently to that settlement. His possession of the papers under such circumstances, and for so long a period, is strongly pursuasive of an intention and understanding that they should be regarded as continuing unsatisfied, and, unless explained, should preponderate, when the evidence of payment is so conflicting as to leave it in uncertainty.—*Doty v. Jones*, 28 Wisc. 219.

There are other material and significant acts. The administrator held a note on Winfield Scott for six hundred dollars, dated August 8, 1872, payable to his father. Instead of settling the mutual demands, and exchanging papers, on the next day after the deeds of trust were transferred, a small payment was made, and a credit entered on the note, for the express purpose of preventing the bar of the statute of limitations, and the administrator retained possession of it. In explanation of permitting him to keep possession of the papers, the administrator testifies, that he said to Winfield Scott, as he had only discharged his own debt, the papers should be delivered to him, as he was administrator, and ought to have possession of them. Winfield Scott declined

to deliver them, saying that it was better that he should keep them for the present, on account of a suit then pending against his father's estate, and if judgment was obtained, the homestead might be involved and sold. ' On hearing this, the administrator acquiesced in his having possession of the notes and deeds of trust. This conversation Winfield Scott wholly denies; and the assertion, that in paying the notes he only discharged his own debt, is not sustained by proof. The evidence clearly establishes that the note for twelve hundred and sixty-nine dollars was the personal debt of William Scott, with which Winfield Scott had no connection in any wise. Without alluding to the avowed fraudulent purpose, for which the papers were left in his possession uncancelled, the explanation is unsatisfactory in view of the fact, that on May 10, 1885, just six years thereafter, a similar payment was made, and credit was entered on the same note, for the same purpose. The reason assigned by Winfield Scott, why he had better keep possession of the papers, had certainly ceased before then.

The statement of Winfield Scott, that when he paid the notes to Rowan, Dean & Co., he regarded his debt to his father as paid and settled, and more than settled, would tend to support the contention of defendant, were it not that his meaning is explained by the further statement, that he kept them, not only to show that his debt was paid, but also the excess paid by him for his father, and to collect the same if it became necessary.

The burden rests on defendants to prove payment. On which party the law casts the burden of proof, should be regarded and taken into consideration in weighing the sufficiency of the evidence as to any question of. fact. The rule is not technical, nor a fiction. Its observance will serve to promote the ascertainment of truth. Keeping in mind that the *onus* is on the defendants to establish the defense of payment, and considering the whole evidence, we can not say that payment, or satisfaction and extinguishment, is satisfactorily proved. At least, the mind is left in doubt and uncertainty, in which case the defendants must fail for want of proof. Both the indebtedness of Winfield Scott to his father, and the indebtedness of his father to Rowan, Dean & Co., were discharged and extinguished, or neither was. The inquiry is pertinent; if paid, why the resort to a mode to prevent the presumption of payment arising from the operation of the statute of limitations? We conclude, that it was not intended to dis-

[Globe Iron Roofing and Corrugating Co. v. Thacher.]

charge the notes and deeds of trust, but that the mutual demands should be kept uncancelled for future set-off and settlement, which, from neglect or other cause, was never consummated.

The complainants are in equity entitled to receive only the amount of their claim against Winfield Scott, and attorney's fees. If they recovered the full amount of the notes, they would hold the excess for him. The defendants have a clear equity to set off his indebtedness against this excess. The decree should be moulded so as to effectuate a complete adjustment of the rights and equities of all the parties. If the land is divisible, it should be sold in parcels, and only so much sold as will be sufficient to pay the amount ascertained to be due complainants by Winfield Scott, and reasonable attorneys' fees and costs of suit. His indebtedness should be set off against the balance of the notes. To authorize such decree, the cross-bill will have to be amended, so as to strike out all the averments in relation to payment, which is not the subject of a cross-bill.

Reversed and remanded.