(November 13, 1909.)

## PITTS ELLIS, Appellant, v. GEORGE W. BASHOR et al., Respondents.

[105 Pac. 214.]

DEBTS SECURED BY MORTGAGE—REAL ESTATE—PURCHASE OF—CONSID-
ERATION—ASSUMPTION OF MORTGAGE DEBT AS PART OF PURCHASE
PRICE—PAYMENT OF MORTGAGE DEBT BY PURCHASER—ASSIGNMENT
OF NOTE AND MORTGAGE FOR PAYMENT.

1. Where B. purchases real estate and assumes the payment of
a mortgage debt thereon as part of the purchase price, and there-
after pays such mortgage, he cannot thereafter assign or have the
same assigned to another person as security for the payment of a
debt due him.

2. *Held,* that the evidence does not support the findings of the
court to the effect that said mortgage debt had not been paid, but
does conclusively establish the fact that said debt had been paid.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial
District, for the County of Nez Perce. Hon. Edgar C. Steele,
Judge.

Action to foreclose a mortgage and to have a prior mort-
gage on the premises canceled. Judgment for defendants.
*Reversed.*

H. G. Redwine, for Appellant.

George W. Bashor, having assumed and agreed to pay the
Pitts Ellis note and mortgage as part of the consideration
for certain real estate to him, and it becoming primarily his
obligation, could not defeat a discharge of same by having
the note assigned to a third person. (Jones on Mortgages,
secs. 864, 865; 27 Cyc. 1333.)

"A promise to pay notes imposes an obligation upon a
party to discharge the same, and where such duty exists, the
party owing it cannot purchase the notes and continue them
in force." (7 Cyc. 1018 (and note), 1026; *Gordon v. Wan-
sey,* 21 Cal. 78.)

Since there was no sale of the Pitts Ellis note and mort-
gage, and it was in truth and fact paid by George W. Bashor,

the only other possible theory upon which Lester Bashor could have any right or interest in and to the mortgage security would be by reason of subrogation. The doctrine of subrogation could not apply, for the reason that no part of the note was paid by Lester Bashor. Subrogation applies only where there has been an actual payment of a debt by some person who must pay it to protect his interests, or who does so under an agreement between the party who pays it and the debtor or creditor that he is to have the security. (Jones on Mortgages, 874, 885, 886, 27 Cyc. 1437, 1438.)

Fred E. Butler, for Respondents, Geo. W. Bashor and Mary J. Bashor, cites no authorities.

Eugene A. Cox, and James E. Babb, for Respondents Lester W. Bashor, Idaho Trust Co. and Lewiston National Bank.

If George Bashor became the principal debtor, he only became so as between himself and Pitts Ellis. As to the creditor, the obligation could only be shifted with his consent. (*Keller v. Ashford,* 133 U. S. 610, 10 Sup. Ct. 494, 33 L. ed. 667.) When one person, being under obligation to do so, or is interested in so doing, pays the debts of another, he may be subrogated to all the rights, securities, and remedies of the creditor. (*Wilson v. Wilson,* 6 Ida. 597, 57 Pac. 708; Jones on Mortgages, 6th ed., sec. 885b; *Quinlan v. Stratton,* 128 N. Y. 659, 28 N. E. 529; *Shreve v. Hankinson,* 34 N. J. Eq. 76; *Comins v. Culver,* 35 N. J. Eq. 94; *Magee v. Leggett,* 48 Miss. 139.)

But Lester Bashor's rights do not rest on the doctrine of subrogation. He has received his security properly assigned. He is not required to ask the court to substitute him for another payee. He is substituted by act of the parties. He is a purchaser who bought the paper for less than par. (*Carter v. Burr,* 113 U. S. 737, 5 Sup. Ct. 713, 28 L. ed. 1147; *Rodman v. Sanders,* 44 Ark. 504, cited and followed in *Davies v. Pugh,* 81 Ark. 253, 99 S. W. 78.)

A court of equity will keep an encumbrance alive, or consider it extinguished, as will best subserve the purposes of

justice and the actual and just intention of the parties. (*Thompson v. Connecticut Mut. Life Ins. Co.*, 139 Ind. 325, 38 N. E. 796.)

Advantage of a payment by a third person cannot be taken by the debtor, as a discharge of his indebtedness, unless it was intended by the payer and the creditor to operate as a discharge. (*Whiting v. Mut. Ins. Co.*, 15 Md. 297; *King v. Barnes*, 109 N. Y. 266, 16 N. E. 332; Jones on Mortgages, 6th ed., 906.)

"The passing of any consideration, even the due amount of money, from the mortgagor to the mortgagee may, or may not, discharge the mortgage according to their intention, and it will not be held to operate as a payment if the parties meant to keep the security alive and not to extinguish it." (27 Cyc. 1393; 20 Am. & Eng. Ency. of Law, 2d ed., 1055; *Keet v. Baker*, 141 Mo. 175, 42 S. W. 940; *Morris v. Alston*, 92 Ala. 502, 9 So. 315; *Martin v. Central L. & T. Co.*, 78 Iowa, 504, 43 N. W. 301; *Capital Nat. Bank v. Holmes*, 43 Colo. 154, 127 Am. St. 108, 95 Pac. 314, 16 L. R. A., N. S., 470.) When the amount due on a mortgage is paid, the intent of the parties in making such payment, whether to extinguish or keep alive the security, will govern. (*Coles v. Appleby*, 87 N. Y. 114; *Kennelly v. Kelly*, 51 Conn. 329; *Weidner v. Thompson*, 69 Iowa, 36, 28 N. W. 422; *Bleckman v. Butler*, 77 Iowa, 128, 41 N. W. 593; *Howe v. Lewis*, 14 Pick. (Mass.) 329; *Johnson v. Valido Marble Co.*, 64 Vt. 337, 25 Atl. 441; *Flower v. Elwood*, 66 Ill. 438; *Sidener v. Pavey*, 77 Ind. 241.)

This court has in several instances held that the question of whether a mortgage is extinguished is a question of intent of the parties to be determined from all the circumstances. (*Western etc. Co. v. Kendrick State Bank*, 13 Ida. 331, 90 Pac. 112; *Vollmer v. Estate of James W. Reid*, 10 Ida. 196, 77 Pac. 325.)

SULLIVAN, C. J.—This action was brought to foreclose a mortgage executed by the defendants, George W. and Mary J. Bashor, on June 2d, 1904, and to cancel a prior mortgage executed by plaintiff, Pitts Ellis, Olive R. Ellis and Raymond Ellis, to the Idaho Trust Co., a corporation, on October 9,

1903, which mortgage covered all the property described in the mortgage to plaintiff and a forty acre tract in addition. Lester W. Bashor and the Lewiston National Bank were made parties defendant because they claimed some interest in the last-mentioned mortgage.

An amended complaint was filed which will be referred to as the complaint. It is alleged therein that on October 9, 1903, the plaintiff, Pitts Ellis, Olive R. Ellis, his wife, and Raymond Ellis, executed to the defendant, the Idaho Trust Co., a certain promissory note for the sum of $1,400, which obligation matured on October 9, 1905, and also executed a mortgage to secure the payment of said note upon certain real estate situated in Nez Perce county; that after the mortgage was executed to the Trust Co., the real estate described therein was sold and conveyed by the plaintiff and others to the defendant, George W. Bashor, who expressly assumed and agreed to pay said note and mortgage as part of the purchase price for said land; that after said property had been sold to George W. Bashor, as aforesaid, he executed and delivered to plaintiff on May 2, 1904, two certain promissory notes, each for the sum of $500, payable respectively in eighteen and thirty months after their date, with interest from their date at ten per cent per annum, and at the time of executing said notes, the said George W. Bashor and Mary J. Bashor, his wife, executed and delivered to plaintiff a certain mortgage, which mortgage covered all of the real estate included in the first mortgage above mentioned except a forty acre tract thereof. Plaintiff further alleges that the first note above mentioned, for $1,400, had been paid in full, and that the mortgage given to secure the same should be canceled and discharged of record; that the real estate described in the mortgages will not at forced sale bring a sufficient amount to satisfy both of said mortgages. Defendants George W. and Mary J. Bashor answered the amended complaint and denied that the debt secured by the first-mentioned mortgage had been paid. The defendants, Lester W. Bashor and the Idaho Trust Co., and the Lewiston National Bank, filed a joint answer in which they denied that said $1,400 note had been paid, and averred that the Idaho Trust Co. transferred said note and

mortgage to Lester W. Bashor, and that said Trust Co. has no further interest in said note and mortgage. The defendants Lester W. Bashor and the Lewiston National Bank filed a cross-complaint, in which they sought to foreclose the first-mentioned mortgage given to secure the payment of said $1,400 promissory note, which we shall hereafter refer to as the Pitts Ellis note and mortgage. They also allege that said note and mortgage were assigned to Lester W. Bashor and by him pledged to the Lewiston National Bank to secure the payment of $1,068, and that said bank holds said note and mortgage by reason of said pledge.

Olive R. Ellis and Raymond Ellis filed an answer to the cross-complaint, raising the same issues as were raised by the complaint and answer thereto. The plaintiff also answered the cross-complaint, denying the allegations thereof, and asked for relief as set forth in his amended complaint. Neither of the defendants, George W. nor Mary J. Bashor, answered the cross-complaint.

On the issues thus made the cause was tried by the court and judgment was entered in favor of the Lewiston National Bank and Lester W. Bashor, to the effect that the Pitts Ellis note had not been paid, and that the Pitts Ellis mortgage was a first lien upon the said real property, and directed that it be sold and the proceeds thereof be applied, first, upon the payment of the Pitts Ellis note and the overplus, if any, be applied on the George W. Bashor notes. A motion for a new trial was made by plaintiff and overruled by the court. This appeal is from the judgment and the order denying the new trial.

All of the errors assigned go to the sufficiency of the evidence to support the findings and decision of the court and to the overruling of plaintiff's motion for a new trial.

The first contention is that the evidence does not sustain the findings to the effect that the Pitts Ellis note secured by said mortgage had not been paid. It is contended that the evidence shows that said note had been fully paid, and that the evidence shows that the Pitts Ellis note was not assigned as alleged in the cross-complaint, but that it was paid in full.

The following facts appear from the record:

The appellant, Pitts Ellis, owned, on October 9, 1903, the real estate included in the Pitts Ellis mortgage, and on that date he, with Olive R. Ellis, his wife, and Raymond Ellis, executed said $1,400 note and secured the payment of same by said mortgage in favor of the respondent, the Idaho Trust Co.; that after the execution of said note and mortgage, Pitts Ellis sold and conveyed said real estate to the respondent George W. Bashor, who expressly assumed and agreed to pay said mortgage as a part of the purchase price for said land; that after said real estate had been sold to said Bashor he executed and delivered to the plaintiff on May 2, 1904, two promissory notes for the sum of $500 each, payable respectively in eighteen and thirty months from date, and secured the payment thereof by mortgage on all of the real estate included in the first mortgage except one forty acre tract; that George W. Bashor paid $280 interest due on said Pitts Ellis note, which was paid to the Idaho Trust Co. The Pitts Ellis note and mortgage remained in the possession and custody of the Idaho Trust Co. from the time of their execution in 1903 until April 11, 1908. No other payments were made upon said Pitts Ellis note until April 11, 1908, when George W. Bashor sold and conveyed to said Trust Co. real estate for which it paid him $5,500. On that date the Idaho Trust Co. received full payment for said $1,400 note.

But it is contended by counsel for respondents that said Pitts Ellis note was purchased by Lester W. Bashor and assigned to him, and the trial court found that as a fact and based its judgment upon that finding. In order to prove the payment of said promissory note, the plaintiff placed upon the stand Frank Kettenbach, who was president of the said Idaho Trust Co., and also of the Lewiston National Bank, who was, no doubt, as friendly to the Bashors as he was to the appellant, and he testified, among other things, as follows:

"The Pitts Ellis note and mortgage was owned by the Idaho Trust Co. That was paid, so far as the Idaho Trust Co. was concerned, April 11, 1908. The Idaho Trust Co. got its principal and the balance with interest in full. That was $1,750, and was paid on April 11, 1908. I rather think that

was paid at the time the Idaho Trust Co. bought a farm from Mr. Bashor, either out of funds that he got or during the transaction. I know it was paid.

"Q. Paid in full on April 11, 1908?

"A. With the distinct understanding, however, that it was to be assigned—but it was not paid; we got our money, with the instruction it be turned over to Lester Bashor. We took this ranch of George W. Bashor.

"Q. And you paid this note off at that time?

"A. Yes, part of the whole deal; I got part of the money from Lester Bashor and part from him.

"Q. Did Lester Bashor give you any direction as to how you should apply the $900 that was received?

"A. There was no direction from him as to how it should be used, simply applied it on what appeared to be the poorest security. . . . . I heard Lester Bashor's testimony, but I didn't understand him to say he had paid $900 on the Pitts Ellis note in 1907. He paid $900 in 1907 to the Idaho Trust Company on the indebtedness of George W. Bashor. I applied it on the $2,900 note of George W. Bashor, and credited it on that. I don't remember any specific payment by Lester Bashor in 1908.

"Q. What amounts have been paid upon that note, the Pitts Ellis note?

"A. Well, the principal has been paid, and practically all of the interest to the time we turned it over; that is, the Idaho Trust Company got the money. There is an indorsement on the Pitts Ellis note of $140; I think George Bashor paid that. There were previous payments of interest, because there were coupon notes, and the coupons prior to that time were paid by somebody; they were attached to the note and they have been taken off. There were two payments of interest of $70 each paid prior to that time, which payments were represented by coupons. I don't remember who paid that, but my best recollection is that George Bashor paid it. George Bashor bought this property which is covered by the Pitts Ellis mortgage and made these payments on the interest. We received no further payments after the note was turned over to Lester Bashor. . . . . The Idaho Trust Company

bought some real estate from George Bashor on April 11, 1908. I was president at that time. I think the considera- tion to him was $5,500. I think the proceeds of the ranch were used to pay off the balance due on the Pitts Ellis and other notes. The Kettenbach Company distributed it around, and paid everything except the $500 discount. Seventeen hundred and fifty dollars was the balance the Idaho Trust Company got on the Pitts Ellis note by that transfer. That was on April 11, 1908.''

On cross-examination and referring to the Pitts Ellis note, the witness further testified: ''When we received our money we didn't cancel this note, but assigned it without recourse and filed it in the vault for the account of Lester Bashor. That is the whole transaction at that time.''

He further testified: ''I applied it, and the final payment was part of an understanding that was made when I got the first $900, that I was to give them a discount of $500 on the whole deal, if he could raise the money to pay off everything, and take up the Pitts Ellis note, and in doing that, he said he got part of the money from his son, and his son was to have this note assigned to him, and we assigned it according to his (meaning George W. Bashor's) direction.''

The only payment made by Lester Bashor was $900, and Kettenbach testifies that he applied that on the $2,900 debt due from George W. Bashor, as he had no instructions where to apply it, and that he applied it on what appeared to be the poorest security, which was the $2,900 note. It appears from the record that George W. Bashor was owing the bank at least $4,000. He sold the bank a ranch for $5,500 and Kettenbach testifies that the Pitts Ellis note for $1,400 and interest was paid at the time of that deal, and that was on April 11, 1908. It appears also from the record that the payment made by Lester Bashor of $900 was made in 1907, and that payment was not applied on the $1,400 note.

It is clear to us that the Pitts Ellis note was paid by George W. Bashor on April 11, 1908, out of part of the proceeds from the sale of his farm. That being true, neither Bashor nor the bank had any authority whatever to assign the same to Lester Bashor, nor had he any authority to reassign it to the

bank for the purpose of securing his own indebtedness to the bank. It is quite clear to the court that there has been a mixing of matters here with the intention of holding said note and mortgage as security for the payment of Lester Bashor's indebtedness to the bank after said note had in fact been paid. Lester Bashor gave Kettenbach no directions on what part of his father's indebtedness to apply the $900 claimed to have been furnished by him, and Kettenbach testified that he applied it on the $2,900 note which was not secured, under an arrangement with George W. Bashor whereby a deduction of $500 would be made if he paid his entire indebtedness to the bank, and the bank had no authority to assign the Pitts Ellis note and mortgage to Lester Bashor after it had been paid in full by George Bashor.

The findings of the court are not supported by the evidence, and the judgment must therefore be reversed, and it is so ordered. And as it appears that Mr. Kettenbach, the president of the bank referred to, and Lester Bashor have both testified in the case, and as their evidence clearly shows that said Pitts Ellis note was fully paid by George W. Bashor, it would be useless to send the case back for a new trial. It will therefore be remanded, with instructions to the trial court to make findings to the effect that the said Pitts Ellis note of $1,400 has been fully paid, and enter judgment and decree as prayed for in the complaint. Costs are awarded to appellant.

Stewart and Ailshie, JJ., concur.