# Wytheville.

## HALL BUILDING CORPORATION v. J. H. EDWARDS.

### June 11, 1925.

Argued before Judge Chichester took his seat.

1. MORTGAGES AND DEEDS OF TRUST—*Liens—Satisfaction of Liens—Burden of Proof.*—In a proceeding under section 6456 of the Code of 1919, providing for the entry of satisfaction of liens, the burden of proof is upon one who applies to have a lien or incumbrance released or discharged to prove payment of the debt secured.

2. APPEAL AND ERROR—*Finding of Trial Court Sustained—Application to have a Deed of Trust Released.*—Upon an application under section 6456 of the Code of 1919, to have a deed of trust released, the finding of the trial court must be sustained, unless it is plainly wrong or without supporting evidence.

3. MORTGAGES AND DEEDS OF TRUST—*Payment of Debt—Release of Mortgage.*—When a debt has been fully paid the debtor is entitled to a release of the mortgage, and the mortgage cannot afterwards be revived by a parol agreement, but the debt must have been actually paid.

4. PAYMENT—*What Constitutes Payment—Tender and Acceptance—Intention—Release of Security.*—Payment of a debt involves both tender by the debtor and acceptance by the creditor, with the intention on the part of the debtor to pay the debt in whole or in part, and so accepted as payment by the creditor; but a debtor may place his money in his creditor's hands for a different purpose, with an understanding that a particular debt is neither thereby paid nor the security therefor released, and the creditor cannot be held to have released his security by such an act.

5. LIENS—*Payment of Debt—Deposit of Money by Debtor with Creditor—Receipt of Interest—Question of Intent.*—Whether or not a lien debt has been paid by a deposit of the money with the creditor by the debtor is always a question of intent, which is a question of fact to be determined from the evidence. There is doubtless a presumption of payment, but it is not a conclusive presumption. And the fact that the debtor not only never demanded or received his note, but recognized it as still due, and paid interest thereon for several years after the deposit of money by him with the creditor, is significant that such deposit was not intended to be a payment of the note.

6.   MORTGAGES AND DEEDS OF TRUST—*Payment of Mortgage Debt—Release of Mortgage—Insurance Money Applied to New Building—Case at Bar.*—In the instant case insurance money, representing a loss by fire on the mortgaged property, constituted a fund which the creditor had the right to have applied in satisfaction of the debt, and the consequent release of the incumbrance; but the creditor was not compelled to insist upon his right so to apply the fund and had the power to waive it.   The debtor also had such an interest in the fund as that, with his creditor's consent, instead of applying it to the payment of his debt, it might be invested in a proposed new building upon the property, and with his creditor's consent the debtor could exercise his option of continuing his obligation, leaving it unliquidated and having the fund differently applied.

7.   MORTGAGES AND DEEDS OF TRUST—*Payment of Mortgage Debt—Release of Mortgage—Insurance Money Applied to New Building—Case at Bar.*—In the instant case property covered by a deed of trust was destroyed by fire.   The trustee collected the insurance on the property but did not pay it over to the creditor, as both the creditor and debtor told the trustee that they had agreed that the insurance money should not be used to pay the debt but for rebuilding the house, which was done, and the balance of the insurance money after paying for the rebuilding was credited on the note secured by the deed of trust.

   *Held:*   That the debt secured by the deed of trust was never fully paid from the insurance funds which were differently applied by mutual consent, and therefore it was not error for the trial court in a proceeding under section 6456 of the Code of 1919 to refuse to release the lien of the deed of trust.

Error to a judgment of the Circuit Court of Norfolk county, in a proceeding under section 6456 of the Code of 1919 to have a deed of trust released.   Judgment for defendant.   Applicant assigns error.

*Affirmed.*

The opinion states the case.

*W. L. Devany, Jr.,* and *Jas. G. Martin and Bro.,* for the plaintiff in error.

*Robt. W. Tomlin* and *I. P. Hoag, Jr.,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

Proceeding under Code, section 6456, the plaintiff in error, the grantee of Edward Hall, sought to have a deed of trust on land, given to secure $8,000.00, released, and gave notice to J. H. Edwards, the creditor, alleging that the debt "had been paid in full, which debt is evidenced by note that you now have and hold."

The questions of law and fact were submitted to the trial court judge, who apparently found as a fact that the debt had not been paid, for he dismissed the plaintiff's motion and awarded costs to the defendant. So the question is whether the deed of trust continues to be a lien upon the real estate now owned by the Hall Building Corporation.

It is urged here that the court erred in refusing to find that the debt had been fully liquidated and that the lien of the deed of trust should, therefore, be released. This claim is obviously based upon the allegation and insistence that the debt has been fully paid and discharged. If so, the court erred in refusing to find that the incumbrance should be released, because the debt had been cancelled by satisfaction. On the other hand, it is claimed for the creditor that the debt has not been satisfied, that the deed of trust is a valid and subsisting incumbrance, and hence that the case has been correctly decided.

[1, 2] This leads us to a consideration of the evidence, bearing in mind that the burden is upon the plaintiff in error, and the finding of the trial court must be sustained, unless it is plainly wrong or without supporting evidence.

The supporting evidence may be thus stated:  Hoag, the trustee, after relating the circumstances of the

original loan of $8,000.00 on August 2, 1920, testifies that the building having been destroyed by fire the December following, he notified the creditor, Edwards, of the fact, and filed claims for the insurance money due thereon. This amounted to $12,000.00, was paid by drafts to him as trustee January 19, 1921, and he deposited them for collection and credit to his account as trustee. Before he paid out the money, however, on January 26, 1921, Edwards, the creditor, and Hall, the debtor, together came to his office where, in the presence of each other, the creditor, Edwards, told him that Hall did not want to pay the debt but to use the money for rebuilding the house immediately and wanted him (Edwards) to hold the money, so that Edwards "could have satisfactory proof that it is used for erection," and indicated that such an arrangement would be agreeable to him (Edwards). Thereupon, the debtor, Hall, suggested that Hoag, the trustee, hand the $8,000.00 to Edwards, to be held by Edwards, who was not to use any part of it until the new house was finished, when it would appear how much money was needed to pay for it, Hall to pay the interest on the whole $8,000.00 for all the time it should be so held up. In the meantime, Hoag, trustee, was to hold the $8,000.00 note and deed of trust of August 2, 1920, as security for such part of it as Edwards should pay to Hall on the completion of the house. This was acceded to, and Hoag handed $8,000.00 to Edwards, the balance of the insurance money $4,000.00, to Hall, and put the note and deed of trust in his safe to await the erection of the house. Hall proceeded with the building and Edwards, his creditor, worked on it. The house having been completed, both again came to the trustee's office on May 5, 1921, and said they had reached an agreement whereby Edwards would turn

back to Hall $6,500.00 of the money, and credit the note by $1,500.00, the interest on the $8,000.00 having been adjusted between them.    This $6,500.00 was subject to some further deductions for amounts due from Hall to Edwards; and thereupon Edwards drew his check to Hall in Hoag's presence, and then asked for the $8,000.00 note, saying that he would credit the $1,500.00 on it, and accordingly did endorse such credit and returned the note to Hoag for safekeeping. When this witness, Hoag, the trustee, was asked if Hall at any time ever asked for the return of his note, he testified: "He has never requested it back, but expressly requested that it be held as security for any part of $8,000.00 he was to get back;" that Hall himself had suggested this course to save the expense of papers evidencing a new transaction.    He, the debtor, was "going to use the same money over again, and he wanted it to stand in *statu quo*, or words to that effect."    On cross-examination, he testified also: "The note was never to be taken up.    It was especially requested that it not be taken up, surrendered or cancelled, but that it should be a live, outstanding obligation, and the money was to be held temporarily." This evidence is confirmed by Edwards, the creditor, who explains that the second house being inferior to the first, he and Hall agreed on $6,500.00 to be invested in it, and that Hall paid him interest on the whole $8,000.00 up to the date of the $6,500.00 transaction. He further testified in connection with holding up the $8,000.00, that while doing so he had declined a request to lend it to another for the reason that he was holding the money for Hall.    Edwards continued to receive interest on the $6,500.00 from that time, May 5, 1921, up to February 2, 1924, but nothing has been. paid since.

The principal became due August 2, 1923.

The contradictions of some of the substantial facts, found in the testimony of the debtor, Hall, do not inspire confidence, for on most of the important points his answers were evasive, and when pressed as to material facts said that he did not remember.

[3] A number of cases are relied upon to support the proposition that when a debt has been fully paid it entitles the debtor to a release of the mortgage, and that it cannot afterwards be revived by a parol agreement. In all of these cases, however, it is found as a fact that the debt had been actually paid, and if the plaintiff in error had established that fact in this case, certainly he would have been entitled to have the deed of trust released. These cases are, *Ellis* v. *Bashor*, 17 Idaho 259, 105 Pac. 214; *Thompson's Adm'r* v. *George*, 86 Ky. 311, 5. S. W. 760; *Roberts, Trustee,* v. *Terry*, 161 Ky. 397, 170 S. W. 965; *Peiffer* v. *Bates*, 45 N. J. Eq. 311, 19 Atl. 612; *Ross* v. *Hodges*, 108 Ark. 270, 157 S. W. 393.

In *Bailey* v. *Rockafellow*, 57 Ark. 216, 219, 21 S. W. 228, this, which so clearly differentiates that case from this, is said: "The note in question was paid unconditionally. There was no agreement that the deed of trust should be kept alive for the purpose of being transferred to another creditor. The payment to Rockafellow had full effect, and accomplished its design, which was the satisfaction of the note, before there was any effort or agreement to revive the deed of trust. There was no effort to keep it alive. Its life was extinguished, and it was *functus officio* before the transfer to Bailey."

*Citizens' Bank* v. *Lay*, 80 Va. 441, is a similar case in which the debt secured by the incumbrance had been fully discharged in accordance with the obligation of

one not a party to the deed of trust, pursuant to his covenant assuming its payment when he bought the encumbered property, and it was after such satisfaction he reissued evidences of the debt.   His assignor claimed a lien therefor under the deed of trust, which was denied.

In support of the judgment of the trial court, these propositions are supported by reason and authority:

[4, 5]  Payment of a debt involves both tender by the debtor and acceptance by the creditor, with the intention on the part of the debtor to pay the debt in whole or in part, and so accepted as payment by the creditor; but a debtor may place his money in his creditor's hands for a different purpose, with an understanding that a particular debt is neither thereby paid nor the security therefor released, and the creditor cannot be held to have released his security by such an act. Whether or not a lien debt has been paid by a deposit of the money with the creditor by the debtor is always a question of intent, which is a question of fact to be determined from the evidence.   There is doubtless a presumption of payment, but it is not a conclusive presumption.   One significant fact in this case is that the debtor not only never demanded or received his note, but recognized it as still due, and paid interest thereon for several years after the transaction in question.   In *Brown* v. *Scott*, 87 Ala. 453, 6 So. 384, the retention by the creditor of the notes which evidenced the debt under the circumstances there shown is held to be evidence that the passing of the money was not intended as payment of the debt.

The just principle to be applied in such cases is indicated in *Howe* v. *Lewis*, 14 Pick. (Mass.) 331, where this is said: "It is equally clear that actual payment of the mortgage has never been made and completed,

although a greater part of the money due has been deposited in the hands of the executor, which he will be bound to appropriate towards the payment and discharge of the mortgage. But as matters now stand, the mortgage cannot be considered as paid; for it was agreed by the parties at the time the money was deposited that it should not discharge the mortgage.''

The precise question here presented was decided in *Johnson* v. *Valido Marble Co.*, 64 Vt. 337, 25 Atl. 444. There had been a destruction of a building by fire, and the insurance thereon had been paid by the insurer, but the money arising therefrom had been used in the erection of new buildings; and the court held that the original mortgage had not been satisfied, and in this connection said: ''It is further suggested on behalf of the defendants that the receipt and endorsement of the insurance checks by the complainant and their deposit to her credit in the ordinary course, operated as a payment of the debt secured, and that, in subsequently transferring the money to the corporation by her checks, she made a new loan which stands unsecured, or at least subordinate to the defendant's mortgage. But before this was done, the complainant, acting for herself, had agreed with her husband, acting for the corporation, and by authority expressly given, that the insurance money should be taken by the company for use in the erection of new buildings, and what was done must be considered in connection with this fact. The insurance was payable to the complainant, and the checks for it would in the regular course of business be made payable to her order, and her endorsement would thus become necessary to enable the company to receive the money. This would not operate as a payment of the complainant's mortgage in the absence of any intention on the part

of the parties to the mortgage that it should so operate; certainly not in the face of their actual agreement to the contrary." 19 R. C. L., section 222, page 438; 30 Cyc. 1181.

[6, 7] This insurance money, representing the loss by fire, constituted a fund which the creditor here had the right to have applied in satisfaction of the debt, and the consequent release of the encumbrance; but he was not compelled to insist upon his right so to apply the fund and had the power to waive it. So also the debtor here had such an interest in this fund as that, with his creditor's consent, instead of applying it to the payment of his debt, it might be invested in the proposed new building, and with his creditor's consent he could exercise his option of continuing his obligation, leaving it unliquidated and having the fund differently applied. In our view of the facts, it is perfectly clear that the debt has never been fully paid from the insurance funds which were differently applied by mutual consent, and hence it follows that the deed of trust is a valid and subsisting encumbrance. So that we are fully in accord with the view of the trial court.

There are some other questions discussed in the briefs, among them whether or not the Hall Building Corporation is a mere "dummy," and that the transfer of the property to this corporation by Hall for ninety-eight per cent of its stock was made in order to set up a stronger claim as an innocent purchaser for value and without notice than the original debtor could have asserted. In our view, it is unnecessary to consider this and the other questions discussed, because whether an innocent purchaser or not, the Hall Building Corporation took the property with notice of the outstanding unsatisfied encumbrance shown by the recordation of the deed of trust.

*Affirmed.*