## WASHINGTON LOAN & TRUST CO. v. BLAIR.

### No. 6259.

United States Court of Appeals for the District of Columbia.

Argued Dec. 10, 1934.

Decided Jan. 28, 1935.

Arthur Peter and George P. Hoover, both of Washington, D. C., for appellant.

W. W. Ross and R. S. Doyle, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

In 1926 Hilltop Manor Company, a corporation, executed a deed of trust on certain real estate in Washington City to G. Bryan Pitts, trustee, to secure the payment, principal and interest, of an issue of bonds in the aggregate sum of. $1,400,000. At the time the bonds were issued and sold, the building on the mortgaged property was not finished, and F. H. Smith Company, a brokerage house in Washington which had acquired and sold the bonds, took over the building and completed it. In order to reimburse itself, Smith Company caused Hilltop Company to convey the real estate to the Berkshire Corporation, a wholly owned subsidiary, and later caused Berkshire to convey the property to the Cavalier Corporation, which had been organized for the express purpose of taking over and refinancing the property. The consideration of the conveyance to Cavalier was the assumption of an indebtedness claimed by Smith Company to be due it in the sum of $590,000 and the outstanding bonds of Hilltop in the amount

of $1,360,000 ($40,000 of the original issue of $1,400,000 then having been paid).

In order to pay Smith Company and retire Hilltop bonds, Cavalier, under date of November 1, 1928, executed a mortgage to Columbia Trustee & Registrar Corporation, also a Smith-controlled company, to secure an issue of first and refunding mortgage bonds in the principal amount of $1,950,000. The purpose of this refinancing was to enable Smith Company, which, as we have already said, had sold the original bond issue to the public, to recall and redeem the bonds of Hilltop Company and release the trust by which that company's bonds were secured, so that the new issue of Cavalier bonds might be sold as in fact first mortgage bonds. The amount of Cavalier issue was the exact amount of the claimed indebtedness of Smith Company, plus the amount of outstanding Hilltop bonds. Smith Company was a large bond dealer located in Washington, with thousands of customers scattered in all parts of the country. The plan adopted by it was to have Cavalier, which it controlled, deliver to it bonds in the amount of $590,000 in discharge of the debt and then to deliver the balance of $1,360,000 of bonds, from time to time, to take up, refund, and discharge a like amount of Hilltop bonds. In accordance with this arrangement, Smith Company obtained $590,000 of Cavalier bonds, and immediately began to sell them to the public, and from time to time thereafter acquired $882,000 of bonds of Hilltop Company. These it deposited as acquired with the trustee in exchange for an equal amount of Cavalier bonds. These, in turn, it sold to the public. Shortly after the acquisition by Smith Company and delivery to the trustee of the $882,000 of Hilltop bonds, a conference was held by the officers of Smith Company, as a result of which the Hilltop bonds then in the hands of the trustee were marked "cancelled."

Some time thereafter, due presumably to market conditions, no further bonds of Cavalier were salable, and, on May 1 and November 1, 1930, default having occurred in the payment of interest and the substituted trustee having duly declared the principal of the debt due and payable, this suit resulted. At that time $478,000 face amount of Hilltop bonds were in the hands of the public. For reasons appearing to the lower court, the Columbia Trustee & Registrar Company, trustee, had been removed and appellee, Blair, appointed successor trustee under the terms of the Cavalier deed of trust. He in due time filed his bill of complaint for the purpose of having the court decree a sale of the property secured by the Cavalier mortgage, but subject to the lien of the mortgage executed by Hilltop, and to have the court decree that the bonds of Hilltop in the amount of $882,000, which, as we have seen, had been acquired and deposited with the trustee in carrying out the refunding plan, were valid outstanding bonds belonging to himself, as trustee, as additional security under the terms of the mortgage executed by Cavalier. Appellant, Washington Loan & Trust Company, as trustee under the last will and testament of Herbert W. T. Jenner, deceased, by leave of court intervened as a party defendant and filed its answer, in which it averred that as such trustee it is the holder and owner of $78,100 face value of the bonds executed by Hilltop, and asked that the court decree that such bonds so held by it, and such other bonds of Hilltop as were still outstanding, be declared to be entitled to the whole security provided by Hilltop mortgage.

The lower court found the facts to be that the $882,000 principal amount of first mortgage bonds held by the plaintiff as successor trustee, and marked "cancelled," were so marked through error and with no intent to extinguish the obligation or the lien of the bonds. The court likewise found that the intervener, appellant, had sustained no damage by reason of the action of the Smith Company in marking the Hilltop bonds "cancelled," because under the provisions of its contract with that company it will receive all that its contract provides for.

There are two questions involved, firstly, whether the bonds of Hilltop in the aggregate principal amount of $882,000 marked "cancelled" were, and are, in fact and law cancelled and are not now secured by the deed of trust executed by Hilltop; and, secondly, if they are not, whether, in view of certain facts to which we shall presently refer, they should be held to be valid and outstanding as against appellant as the holder and owner of $53,900 of Hilltop bonds purchased by its decedent subsequent to actual cancellation.

We agree with the decision of the lower court that in the circumstances the cancellation of Hilltop bonds by Smith Company and its instrument, Columbia Company, was without authority and ineffective. The evidence abundantly shows, and the lower court found as a fact, that the bonds were marked "cancelled" through error. Unquestionably,

the purpose wh.ch impelled Smith Company, and likewise its creature, Columbia Company (the then trustee), in what was done was solely to prevent the redeemed bonds then in the hands of the trustee from being stolen or lost and thus coming into the hands of bona fide purchasers for value. To reach any other conclusion would be to disregard the evidence and to attribute to Smith Company and Columbia Company a motive contrary to their own interests. But, aside from the question of motive, the authority of the trustee was controlled by the express terms of the contract (i. e., Cavalier mortgage), where, in section 9 of article 9, it is provided: "All bonds secured by the underlying mortgage (Hilltop mortgage) and received by or deposited with the trustee under the terms of section 2 of article one shall be held by the trustee, subject to the terms and provisions hereof, as additional security for the bonds hereby secured until such time as the Company shall arrange for the release, satisfaction, and discharge of the underlying mortgage. Whenever the company shall have arranged for the release, satisfaction, and discharge of the underlying mortgage, the trustee may simultaneously with such release, satisfaction, and discharge, surrender to the company, or to whomsoever the company may designate, the bonds held by it hereunder and secured by the underlying mortgage so released, satisfied, and discharged. * * *"

Under this provision, the trustee's duty was to hold the surrendered bonds, not to cancel them, for, as we have seen, the purpose of the issue of bonds by Cavalier was to refund and retire the bonds of Hilltop, and, until this was possible by possession of all, to hold those redeemed as collateral security under the precise terms of the Cavalier mortgage; and neither Smith Company nor the trustee had any other power or authority in relation to the redeemed bonds. There is nothing in the charter of Cavalier which would prevent its making such a contract with the purchasers of its bonds, and there is nothing unusual in the agreement. The intention of Cavalier was to issue and deliver a bond secured by first mortgage. To effectuate this end, it agreed with Smith Company to deliver to it bonds of Cavalier in exchange for Hilltop bonds, bond for bond, so that, when the whole issue of Cavalier bonds was outstanding, the whole issue of Hilltop bonds would be in the hands of the trustee ready for cancellation; and the contract between Cavalier and its bondhold-

ers was that the bonds of Hilltop, as they were acquired, should be retained, uncancelled, and as collateral security for the Cavalier debt so long as any of the Hilltop bonds were in the hands of the public. Nor is there anything to prevent a corporation from acquiring its own bonds, or bonds which it has assumed and agreed to pay, and keeping them alive. The question in such cases is always one of intention. Hall B. Corporation v. Edwards, 142 Va. 209, 128 S. E. 521; Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868; Garland Coal & Mining Co. v. Helvering, decided by this court on January 14, 1935, 75 F.(2d) 663; Virginia Securities Co. v. Patrick Orchards (C. C. A.) 20 F.(2d) 78, 84. In the last-named case it was said: "As it clearly was not their intention that the bonds should be paid, but that they should be transferred in such manner as to carry out the agreement with the indorsing directors, and as they were transferred for that purpose, and, in accordance with the agreement, were deposited with the bank as security for the note which the directors indorsed, we think that payment did not result, and that the obligation of the bonds was not extinguished by what was done."

As we have already pointed out, the cancellation of the Hilltop bonds made by the original trustee was made for the sole purpose of avoiding the possibility of these bonds getting into the possession of outsiders. As the change was unauthorized, the validity and effectiveness of the bonds should be revived by a court of equity, and this was the result of the decree below. Fidelity, etc., v. Shenandoah Ry. Co., 86 Va. 1, 9 S. E. 759, 19 Am. St. Rep. 858; Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868. But appellant says that, however correct the rule, it does not apply where the rights of third persons have intervened and will be injuriously affected by reviving the instrument, and this, it says, is the case as to some $53,900 of Hilltop bonds of which it is the holder. The evidence in this respect shows that Mr. Jenner purchased that amount of Hilltop bonds in the public market in the latter part of the year 1929 and after the refinancing of the property had progressed to the stage where the new and refunding bonds were being issued and sold to the public. The Smith Company, under its contract with Cavalier, was then undertaking to carry out the refunding operation; that is to say, it was acquiring Hilltop bonds and delivering them to the Cavalier trustee in exchange

for the bonds of the latter, which in turn it was selling to the public. In carrying out this arrangement, it expected to acquire all of the Hilltop bonds and satisfy the Hilltop mortgage.

But, in its effort to sell Cavalier bonds, it stated in a newspaper advertisement that as of July 26, 1929, there were then outstanding underlying obligations. consisting of only $556,000 principal amount of first mortgage bonds (Hilltop bonds), and in another advertisement it stated that the amount of the underlying lien had been reduced by the refunding operations to $568,500, "as $831,-500.00 principal amount of the bonds secured by the underlying mortgage have been retired and cancelled." Appellant says that it was in reliance on these statements that Mr. Jenner purchased the $53,900 of bonds which appellant holds as trustee under his last will and testament. And, in this view, it tells us that, whatever may be the decision with relation to the unwarranted cancellation of the bonds, as to other holders of Hilltop bonds, in so far as the rights of appellant are concerned, the bonds purchased by him after these advertisements, in reliance on these statements, are entitled to priority of payment.

The lower court held against this claim, saying, among other things, that the advertisements published by the Smith Company were not for the purpose of inducing any one to purchase Hilltop Manor bonds, but were solely for the purpose of inducing the purchase of Cavalier bonds, and we think this is manifestly true. The Smith Company was engaged in exchanging Cavalier bonds for Hilltop bonds and, where this could not be done, in selling the one and redeeming the other, so that it is obvious the purpose of the advertisement was to apprise prospective purchasers of Cavalier bonds of the successful progress of the plan to retire Hilltop bonds and thus to induce the purchase of Cavalier bonds. It had every reason not to wish to represent the Hilltop bonds as so well secured as to induce their retention or private sales or transactions in them, for this would have frustrated the plan. In this view, it is clear that the misrepresentation cannot be given the effect which appellant claims for it, for the doctrine of estoppel, which appellant invokes, cannot be sustained except in a case where the representation was not only material and false, but was made with the intent that it should be acted on by the party claiming to be damaged. Southern Development Co. v. Silva, 125 U. S. 250, 8 S. Ct. 881, 31 L. Ed. 678; New York Title & Mortgage Co. v. Hutton (App. D. C.) 71 F.(2d) 989. Here, as we have seen, the misrepresentation was not made with the intent that it should be acted on by one intending to purchase Hilltop bonds.

Courts will give appropriate redress or relief for actionable misrepresentation. to any one to whom the same was made or for whom it was intended, but only to such. 1 Bigelow on Frauds, p. 197, § 2; Slade v. Little, 20 Ga. 371; Henry v. Dennis, 95 Me. 25, 49 A. 58, 85 Am. St. Rep. 365. Nor was the representation believed by Smith Company to be false. It is apparent that it believed the Hilltop bonds, which had been physically cancelled, to have been legally retired, but, the cancellation being unauthorized, the bonds were subject to be revived; and, in making the statement it made, the Smith Company was acting for itself alone and only for the purpose of influencing the purchase of Cavalier bonds. There was no privity between it and the holders of Hilltop bonds, to whom the statement was not addressed or intended. "Where there is neither fraud or collusion nor privity of contract, the party [making the misrepresentation] will not be held liable." Much less some one else for whom he is not authorized to speak. National Bank v. Ward, 100 U. S. 195, 206, 25 L. Ed. 621. And so, as we think, the untrue statement made by Smith Company in its advertisements ought not to prejudice the rights of those who, in reliance upon the terms of the mortgage, bought Cavalier bonds. The contract which that company made with the purchasers of its bonds was the chart of their rights, and no action of Smith Company could diminish or enlarge them. Appellant's rights, on the other hand, are declared in the provisions of the Hilltop mortgage, and that mortgage, so far as we know, is not in default, nor has any action been taken to foreclose. By its terms appellant, as trustee for the owner of Hilltop bonds, is entitled as much now as ever to the proportion of the proceeds of the property mortgaged for the security of the bonds it holds. That proportion is the amount which the bonds held bear to the whole amount secured. Its contract gives it no greater right than this, and it may not take advantage of the negligent conduct of Cavalier's trustee on the one hand, or the Smith Company on the other, to increase those rights.

Affirmed.