McCOWN, CLERK, v. WESTBURY.

1. PAYMENT—MORTGAGES.—A payment made by a mortgagor on a mortgage debt, after conveyance of the land to a third party, and then received back by him from mortgagee, must be credited on the mortgage debt at instance of such grantee, even when the original parties intended to revive the lien of the mortgage for the original amount.
2. APPEAL.—A decree appealed from may be modified by consent in this Court in a particular not before the Court below.
3. PAYMENT indorsed on bond and afterward erased, under the facts of this case, properly disallowed as a credit.
4. REHEARING refused.

Before KLUGH, J., Florence, May, 1897.    Modified.

Foreclosure by J. W. McCown, as clerk of court, as administrator of estate of Sarah W. Hunter, *v.* M. E. Westbury, T. H. Waterman, Thos. W. Westbury, and J. A. Banks. From Circuit decree the defendants appeal.

*Messrs. Dibble & Dantzler* and *Woods & Shipp*, for appellants, cite: *Payment on bond and return of same amount to holder, is payment:* 3 Bibb, 10; 6 Mod., 237; 8 Mo., 49; 22 Gratt., 643; 6 L. R. A., 695; 1 Hill, 227. *Question of application of payment one of fact:* Bail. Eq., 342; 3 Strob., 497; 24 S. C., 241. *Payment not applied by payer should be applied to debts as they become due:* 1 Bay, 497; 1 Strob., 426. *Payment and receipt back does not affect intervening holders:* 36 S. C., 343. *Lands sold by mortgagor to third parties should be last sold in foreclosure:* 1 Strob. Eq., 178; 3 S. C., 25; 14 S. C., 92; 17 S. C., 206; 38 S. C., 98.

*Messrs. George G. Thompson* and *Z. T. Kershaw*, contra, cite: *Rule as to application of payments:* 20 S. C., 46; 17 S. C., 37. *Where sureties or married women are interested, creditor has same right of application:* 22 S. C., 289.

This opinion was filed April 4, 1898, but on petition for

rehearing, remittitur was stayed until May 24, 1898.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    Sarah W. Hunter, by deed dated November 8th, 1884, recorded December 5, 1884, conveyed to W. J. Westbury three tracts of land, and on the same day, November 8th, 1884, to secure the purchase money, W. J. Westbury executed to Sarah W. Hunter his bond for $1,500, conditioned to pay $500 on the execution of the deed, and $1,000 in four annual instalments, with interest payable annually; and to secure said bond he, at the same time, executed a mortgage on said three tracts of land, which was recorded January 9, 1885.    W. J. Westbury, for valuable consideration, by deed dated November 22, 1884, recorded December 5, 1884, conveyed these lands to his wife, the defendant, M. E. Westbury, for life, with remainder in fee to defendants, Thomas W. Westbury and Thomas H. Waterman, and these remaindermen, by deed dated January 12, 1892, recorded October 10, 1892, conveyed two of these tracts of land, the twelve acre tract and the thirty-four acre tract, to the defendant, J. A. Banks.    Sarah W. Hunter having died, the plaintiff, J. W. McCown, as clerk of court of Florence County, became administrator on her derelict estate, and brings this action for foreclosure of said mortgage.

The principal question in the case was as to the application of certain payments on said bond as affecting the interest of the purchasers of the mortgaged premises.    The following indorsements appear upon the said bond: "Received on this bond $500 of W. J. Westbury, November 8, 1884.    (Signed) Sarah W. Hunter, per James. M. Hunter." "Received on this bond the first instalment due this day, $250, up to November 8, 1885.    Balance now due on this bond on November 8, 1885, is $750, and interest.    February 3d, 1885.    (Signed) Sarah W. Hunter." "Received, Darlington, S. C., February 20, 1885, from Mrs. S. W. Hunter back the $250 that I paid her on this bond, leaving the bond now standing as it was first drawn, calling for $1,000 to be paid in four annual instalments, at seven per

cent. interest, payable annually. (Signed) W. J. Westbury."
"Received on this bond by express $320, December 22,
1885, as per loose receipt sent back by mail fully explains
which was signed by my wife, son, and self, January 4, 1886.
$320. (Signed) J. M. Hunter." The loose receipt referred
to in above indorsement is as follows: "Received of Wm.
J. Westbury by express $303.50 in money and $16.43 tax
receipt, making in all $320, which is placed to his credit
on bond, and dated the 22d day of December, 1885, which
is the day he expressed it. January 4, 1886. (Signed)
Sarah W. Hunter, James M. Hunter." "Received on this
bond a post office money order for $50, dated the 3d of De-
cember, 1888. (Signed) J. M. Hunter."

In reference to the payment made February 3, 1885, the
Circuit Judge held as follows: "The contention of the de-
fendants as to the effect of the payment of the $250 on the
bond, on the 3d of February, 1885, on their rights as
grantees, must prevail. Prior to the date of this payment,
but subsequent to execution of the bond and mortgage, W.
J. Westbury had conveyed these lands, as before stated, to
M. E. Westbury for life, with remainder to Thomas W.
Westbury and T. H. Waterman, and the conveyance by the
remaindermen to J. A. Banks vested in him whatever rights
they had in reference to the land so conveyed. This pay-
ment of $250 was a discharge of the lien of the mortgage
*pro tanto*, and such lien could not be revived so as to affect
the rights of third persons by the payment of the money to
the mortgagor and his indorsement on the bond. Such in-
dorsement did renew his obligation on the bond, and doubt-
less it was the intention of the mortgagor and the mortgagee
to revive the lien of the mortgage, but the rights of these
grantees could not be affected by such intention, nor any
agreement, oral or written, which the mortgagor and mort-
gagee may have made. 2 Jones Mort., sec. 943, *et seq.* Any
practical benefit to these defendants to be derived from this
position is, however, lost by the exercise on the part of the
plaintiff of his unquestionable right, in the absence of any

direction to the contrary by the debtor, to apply subsequent payments first to this unsecured portion of the bond. *Bell* v. *Bell,* 20 S. C., 45." Appellant excepts to this ruling of the Circuit Judge, as follows: First. Because his Honor having held that the payment of $250 on the 3d of February, 1885, was a discharge of the lien of the mortgage *pro tanto,* and such lien could not be revived so as to affect the rights of third persons by the payment of the money to the mortgagor, and his indorsement on the 20th of February, 1885, on the bond, and that such indorsement did renew his obligation, and doubtless it was the intention of the mortgagor and mortgagee to revive the lien of the mortgage; but the rights of the grantees could not be affected by such intention, nor any agreement, oral or written, which the mortgagor and mortgagee may have made, erred in holding that "Any practical benefit to these defendants to be derived from this position is, however, lost by the exercise on the part of the plaintiff of his unquestionable right, in the absence of any direction to the contrary by the debtor, to apply subsequent payments first to this unsecured portion of the bond." Second. Because his Honor having held that it was the intention of the mortgagor and mortgagee to revive the lien of the mortgage by the indorsement of the 20th of February, 1885, on the bond of "receiving back" the $250 paid on the 3d of February, 1885, erred in not holding that it was also the intention of the mortgagor and mortgagee that the payments on the bond subsequent to the indorsement of the 20th of February, 1885, were to be applied to the lien of the mortgage, and, therefore, to the portion of the bond secured by the mortgage. Third. Because his Honor erred in holding that "Any practical benefit to these defendants to be derived from this position is, however, lost by the exercise on the part of the plaintiff of his unquestionable right, in the absence of any direction to the contrary by the debtor, to apply subsequent payments first to this unsecured portion of the bond;" there being no evidence to sustain the con-

clusion that the mortgagee had exercised such right. Fourth. Because his Honor erred in holding that the plaintiff had made application of subsequent payments to the "unsecured portion" of the bond; and erred in not holding that such subsequent payments being indorsed upon the bond, were not payments upon any unsecured portion of the bond, and, being so indorsed, were payments upon the mortgage executed to secure the bond. Fifth. Because his Honor erred in not holding that the receipt of the $250 "back" indorsed upon the bond and signed by W. J. Westbury, the obligor in the said bond, created a new promise to pay a new debt on the part of the said obligor, and that the subsequent payments indorsed upon the bond could not be applied to the fulfillment of such new promise and thereby defeat the rights of the defendants—the appellants.

These exceptions, we think, will require a modification of the Circuit decree.   Undoubtedly, a creditor, having two or more claims against a debtor, has the right, in the absence of any direction by the debtor at the time of payment, to apply the payment as he chooses, as a general rule, and may exercise this right at any time before judgment or verdict. *Bell* v. *Bell, supra.* But the error of the Circuit Judge was in finding from the evidence that the creditor had made the application of the payment subsequent to February 3, 1885, to the debt unsecured by the mortgage; whereas he should have found that the debtor had made, and the creditor had applied the payments to the bond secured by the mortgage. There was no parol evidence on the subject. The only evidence in the case bearing on this question was the indorsements on the bond and the allegation in the complaint that said payments were made on said bond. The Circuit Judge, moreover, found that "doubtless it was the intention of the mortgagor and mortgagee to revive the lien of the mortgage." This finding as to the *intention* of the parties is not questioned, hence we must take that to be true. It follows, in the absence of any evidence of a change in the views of the parties with

respect to the effect of this transaction on the 20th of February, 1885, that neither party thought there was any unsecured debt between them, when the subsequent payments were made, and that, therefore, such payments were made and received just as the indorsements on the bond show, as payments on the bond, which, according to allegations of the complaint and in fact, the mortgage was gived to secure. There could be no intention of the mortgagor to apply the subsequent payment to an *unsecured* debt, when, as a matter of fact, both parties thought the lien of the mortgage was revived so as to cover the $250 paid and afterwards returned to the mortgagor. This is not a case wherein the Court is called upon to make application of payments, since the Court makes such application only when both debtor and creditor fail to do so; and, as we viewed the facts before us in this case, the debtor *made* the payments and the creditor received and applied the payments on the bond secured by the mortgage. When the application is once made, the parties cannot in any way change it so as to affect the intervening rights of third parties, not consenting. There was error, therefore, in not allowing all the payments indorsed on the bond as a credit on the mortgage debt, as against the defendant purchasers of the mortgage premises.

The eighth exception alleges error in not providing for the sale of the eighty-eight acre tract, which has not been conveyed by the defendants, M. E. Westbury, Thomas W. Westbury, and Thomas H. Waterman, before the sale of the two tracts conveyed to the defendant, J. A. Banks. This point was not, so far as it appears, raised before the Circuit Court nor passed upon by it, but inasmuch as respondent in his argument expresses a willingness that the decree may be amended in this particular, and that the eighty-eight acre tract shall be sold first, it is so ordered.

The ninth exception alleges error in disallowing payment of $52.50 interest on the bond, February 3, 1885, having erasure marks across the same. After an inspection of the original bond, containing the indorsement in reference to

this matter, we are satisfied with the following disposition thereof by the Circuit Judge: "It is contended that the $52.50 erased from the indorsement on the bond, as above stated, was money actually paid, and should be credited on the debt. There is no evidence on this point except the writing itself, and what may be gathered by way of explanation from the succeeding indorsement made by W. J. Westbury. A careful inspection of the erasure shows that it was made by the same hand which wrote the indorsement and in the same ink. It is apparent, too, that the last two words of the indorsement, 'and int.,' were written after what precedes them had been written and punctuated. The punctuation is two small dashes, thus, '— —,' instead of a period. These occur before the word 'balance,' and again after the word 'dollars,' in the last sentence of the indorsement, showing that the writing at first ended there, and the added words, 'and int.,' were partly written over the last punctuation mark, most probably after the erasure had been made. Yet they have the appearance of having been written contemporaneously with the rest of the receipt of which they form a part. This entire indorsement is written by a different hand from that which wrote the others that appear on the bond, and is signed by Mrs. Sarah W. Hunter herself, while all the other credits are both written and signed by her husband, J. M. Hunter. My conclusion is, that the erasure was made contemporaneously with the receipt, and that it was done to conform the writing to the facts. This view is supported by the fact that W. J. Westbury, the obligor, some time afterwards wrote upon the back of the bond, immediately following the above indorsement, and with the same before his eyes, the words, 'received back the $250 that I paid on this bond, leaving the bond now standing as it was at first drawn, calling for $1,000, to be paid in four annual instalments, at seven per cent., &c. If he had really paid the $52.50, he could hardly have failed to mention it, and certainly would not have assented to the

statement that the bond then stood as it was first drawn as to amount, interest, &c."

The judgment of the Circuit Court is modified in accordance with the views herein announced.

Petition for rehearing was duly filed and remittitur stayed. On May 24, 1898, the Court handed down an order refusing the motion, because no material fact or principle of law had been overlooked.