[Kirkland v. Arnold.]

# Kirkland *v.* Arnold.

### *Bill to Enjoin Foreclosure of Mortgage.*

(Decided May 16, 1912.　59 South. 162.)

1. *Mortgages; Payment; Burden of Proof.*—Where property destroyed by fire was mortgaged and was insured, $400 being on the house and $200 on the household furniture, and the whole face of the policy was collected, prima facie the amount due on the house belonged to the mortgagee, and its payment to him by the insurance company would operate as a payment on and satisfaction pro tanto of the mortgage debt; but the $200 on the furniture belonged to the insured, and the burden was on him to show its payment and application as a credit on the mortgage debt.

2. *Same.*—The evidence examined and held to warrant a finding that by an agreement between complainant and respondent, mortgagor and mortgagee, there was no application of the insurance money collected by the mortgagee, but that was left open to future adjustment, and that the mortgagee paid to the mortgagor $350 of such money, and that the mortgage was entitled to a credit of only $250.

3. *Same; Insurance.*—The fund derived as proceeds of the insurance on mortgaged property in case of loss may be diverted by agreement between the mortgagor and mortgagee, and applied to other uses than the payment of the mortgage debt, or may be held for future disposition.

APPEAL from Henry Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by M. W. Kirkland against J. F. Arnold to restrain the collection of a mortgage and cancel same. From a decree denying complainant's relief he appeals. Modified and affirmed.

B. B. HAYS, and STEINER, CRUM & WEIL, for appellant. The appellant insist that he is entitled to a credit for the amount of the insurance loss which was collected in full, the same having been made payable to the mortgagee as his interest may appear, and that at least $400 of the fund inured absolutely to the benefit

of appellee.—*Capital City I. Co. v. Jones,* 128 Ala. 361. The Chancellor erred in allowing the attorney's fee.— *Ward v. Bank,* 130 Ala. 597.

W. O. LONG, for appellee. The question is largely one of fact, and the court took the proper view of the situation, and the judgment should be affirmed.

SOMERVILLE, J.—Appellant filed his bill of complaint to restrain appellee from proceeding to foreclose a certain mortgage executed to him by appellant, alleging usury, and showing that he had previously tendered to respond the sum of $425 in satisfaction of the mortgage debt, which he brought into court with his complaint. This amount, the bill alleges, was sufficient to discharge the entire balance of the debt, including the expenses of executing and recording the mortgage, and any reasonable attorney's fees for services rendered in foreclosing same or collecting the debt secured thereby. The prayer is that said tender be held sufficient, that the debt be freed of all interest by reason of the usury shown, and that the mortgage be discharged and canceled. Complainant offers to do equity fully, and submits himself to the court. The chancellor decreed that complainant was entitled to relief and ordered a reference to the register to ascertain the amount due on the debt without interest. The register allowed complainant a credit of $400 for insurance money collected and paid to respondent after the burning of the mortgaged building under a policy taken out by the mortgagor with the usual clause attached making any loss due to the assured payable to the mortgagee as his interest might then appear and reported as due on the mortgage a balance of $607.60 together with a solicitor's fee of $50. The insurance policy referred to

[Kirkland v. Arnold.]

was for $600 in all, $400 being placed on the mortgaged premises, and $200 on household furniture not included in the mortgage.

The register's theory was that the payment of the $400 to the mortgagee by the insurance company became as matter of law a credit on the mortgage debt, and that the other $200 remained the property of the mortgagor. Complainant's theory and claim is that, while the register's view as to the $400 is correct, nevertheless by agreement between himself and respondent the entire $600 was paid to the latter as a credit on the mortgage debt. He excepted to the register's report on this phase, and also for the allowance of an attorney's fee. Respondent's theory and claim is that by agreement between himself and complainant there was no application of the insurance money to the debt, the amount to be so applied being left open to future adjustment, and that, in fact, he paid over to complainant $350 of it at various times as insurance money, and kept only $250 as a credit on the debt. Complainant claims that the $350 procured by him from respondent in several items after the collection of the insurance money was not an allowance to him of insurance money, but were new separate loans, wholly unrelated to prior transactions, and not in abatement of the credit due him of $600 for the whole of the insurance money. Both parties filed exceptions to the register's report in accordance with their respective claims, and on final submission the chancellor sustained respondent's exceptions, set aside the report, and decreed that the balance due on the mortgage debt was $757, the result of his holding being that only $250 of the insurance money went as a credit thereon. He also allowed to respondent $25 for attorney's fees accrued in the collection of the debt prior to the filing of this suit. Other features

of the decree need not be noticed, as the assignments of error are directed only to these two. As the register's report was set aside entirely, and the final decree rendered independently of it, it is not necessary to consider the action of the chancellor with respect to exceptions to that report; all meritorious questions being presented by appellant's exceptions to the final decree.

The issue we have to determine is primarily one of fact; but, before considering the evidence offered thereon, it is well enough to first determine the legal status of the proceeds of the insurance policy, apart from any alleged agreements of the parties. It is readily apparent that the $200 collected on the furniture belonged to complainant, and the burden was on him to show its payment and application by him as a credit on the mortgage debt; and it is equally apparent that prima facie the $400 collected on the mortgaged building belonged to the mortgagee, and its payment to him by the insurance company would operate as a payment on, and satisfaction pro tanto of, the mortgage debt.—*Cap. City Ins. Co. v. Jones,* 128 Ala. 361, 30 South. 674, 86 Am. St. Rep. 152; *Palmer, etc., Bank v: Ins. Co. of N. America,* 166 Mass. 189, 44 N. E. 211, 32 L. R. A. 615, 55 Am. St. Rep. 387, 391. He is bound to so apply it, and will be held to have done so.—1 Jones, Mort. (6th Ed.) § 409.

But by agreement between mortgagor and mortgagee the fund may be diverted and applied to other uses, or be held for future disposition; and in the present case the respondent must assume the burden of showing its diversion or withholding from its appointed destination by such an agreement.

R. C. Bland, the insurance agent, and also assistant cashier of the local bank, testifies that the $600 check was payable to complainant and respondent jointly,

and indorsed and collected by them jointly, that complainant took out $50 of it, and the balance was left by them in the bank deposited to respondent's credit. This flatly contradicts complainant, who says that he paid respondent the full amount of the insurance money by transferring to him the check, and then borrowed $50 from him.

Complainant's testimony is that he paid respondent the $600 on the mortgage debt on November 15, 1907, and at once borrowed $50 of it; that about 10 days later he went to respondent, and requested a loan of $200, which was acceded to, and a check drawn for the amount; that again, about two weeks later he secured from respondent a third loan of $100 for which another check was drawn; and that nothing was said about insurance on these last two occasions. All this is specifically denied by respondent, who testifies that the $550 was deposited by them in his name to be kept there until they had a settlement as to the amount due on the mortgage debt, and subject to future agreement as to how much of it should be applied to the debt; that he afterwards checked out to complainant $300 of it as insurance money, and not as loans; and that the remaining $250 was all that was ever applied to the debt.

We have already pointed out wherein complainant is contradicted in important particulars by the bank cashier. But complainant's testimony is intrinsically weak by reason of the strong improbability of his narrative, which is contradicted at every point by reason and common sense. The previous course of dealing between him and respondent was businesslike and prudent, and loans were secured by note and mortgage fortified by insurance policies; and yet complainant avows that he obtained three loans, aggregating $350, without securi-

ty, without note, and without a word being said as to how or when it should be repaid, if ever. With a safe mortgage security he avows that respondent without agreement or objection deliberately transformed his security debt to the extent of $350 into an absolutely unsecured debt, without so much as a written memorial to protect him. Such conduct is not wholly incredible, but it must be conceded that its gross folly, unexplained, is a stumbling block even to a generous credulity. On the other hand, the processes by which complainant summarily procured at three several times $50, $200, and $100, are entirely in accord with respondent's version of the case.

Again, it is a singular thing that complainant ventured to buy the market business from Bethune without knowing where he would get the money to pay for it. But he boldly purchased it first, and then went with the purchaser to complainant to get the money to pay for it. He must have had some better and stronger assurance that the money would be forthcoming than the mere hope of getting a large loan without offering any security to a lender who, experience must have admonished him, took notes and mortgages from borrowers. So certain was he of getting the money that his only precaution was to put a blank check in his pocket. The nature of the transaction contemplated by this meager equipment is scarcely open to serious doubt. We are satisfied it was not a loan. It is true that Bethune says that, on the occasion when complainant got the $200, after complainant had talked privately with respondent, they came back to him, and he heard respondent say that complainant wanted to borrow some money from him. We do not regard this as an important contradiction of respondent on this point. Bethune was testifying about a conversation that occurred sixteen

months before, and the distinction between borrowing and getting the money was not material to his purposes. A preconception that it was to be borrowed might serve to confuse his hearing and his memory as to that single word, or a subtle suggestion afterwards from some interested person, aided by the spirit of complaisance that prompts us to favor if possible an appealing friend, might have supplied his memory. On the whole, we are more than reasonably satisfied that the chancellor's conclusion on this phase of the case is correct, and should not be disturbed. While complainant's tender concedes that something was due respondent for an attorney's fee incurred by him in the uncompleted foreclosure proceeding, it does not specify any particular amount; and, as the whole amount tendered was not sufficient to pay the principal debt, there remains no admission by complainant as to what amount would be a reasonable allowance for such fee. The only evidence submitted by respondent is that $50 would be a reasonable fee for foreclosing the mortgage in the chancery court; there being no such service here rendered. It may be that, where legal services are rendered in the immediate case under the observation of the chancellor, his allowance for those services will not be set aside on appeal, although the parties have offered no evidence of their value. But such is not the case here, and we think the fee should have been disallowed for want of supporting evidence.

The decree will be modified by the elemination of the $25 attorney's fee, and, as thus modified, will be affirmed. Three-fourths of the costs of this appeal will be taxed upon appellant, and one-fourth upon appellee.

Modified and affirmed. All the Justices concur.