## 12406

### BANK OF SWANSEA v. WILLIAMS *ET AL.*

#### (142 S. E., 234)

1. MORTGAGES—BANK HOLDING NOTE, INCLUDING MORTGAGE INDEBTEDNESS AND UNSECURED OBLIGATIONS, HELD REQUIRED TO APPLY INSURANCE MONEY RECEIVED ON DESTRUCTION OF HOUSE ON MORTGAGED LAND ON MORTGAGE INDEBTEDNESS.—Where note executed to bank included other eindebtedness and obligations besides a mortgage indebtedness due on note and mortgage, and some of obligations evidenced by note were unsecured, *held* that, on bank receiving insurance money for destruction of house on mortgaged land, it was required to apply it to the mortgage indebtedness, and could not apply it to the entire note.

2. ESTOPPEL—"WAIVER" IS VOLUNTARY RELINQUISHMENT OF KNOWN RIGHT.—"Waiver" is a voluntary relinquishment of a known right.

Before DEVORE, J., Lexington, December, 1926. Affirmed.

Action by the Bank of Swansea against Annie Williams and others. Judgment for defendants, and plaintiff appeals.

Following are a portion of the decree of the Court below and the plaintiff's exceptions:

It is therefore ordered, adjudged, and decreed that the plaintiff herein, Bank of Swansea, have judgment against Annie Williams in the sum of $234.94, with privilege to

plaintiff to assert its claim under the note for $2,325 and its security, the chattel mortgage, and likewise it may assert its claim for the insurance premium and the claim against the husband of Annie Williams and the $300 note and real estate mortgage, these claims to be adjudged on a fair and correct basis of what is actually due thereon.

## EXCEPTIONS

Plaintiff appeals from the decree alleging the following errors:

(1) His Honor erred in disallowing the application of payment made by the bank because the note returned by the respondent to which the insurance money had been applied is a general collateral note, and assigns to the bank real estate mortgages as per list (the description having been obliterated), which must have been the two mortgages on the land on which the insured house is situate.

(2) His Honor erred in permitting respondent to open up the statement of the application of the payment after she had accepted as paid the mutilated note to which the insurance was applied, and after she had rectified and confirmed the transaction by signing a note, on February 12, 1924, of $1,429, the amount still due the bank and sued for in this action.

(3) His Honor erred in suggesting to respondent and in permitting her to put in evidence after the testimony was closed the note to which the insurance had been applied by the bank after keeping the same for nearly two years, because any option which she had to such application should have been made at the time she accepted the note as paid, and it was accepted in evidence too late after the case had been closed and argued, and at a time when the bank could not reply to it or offer any evidence in regard to it.

(4) His Honor erred in accepting as evidence in the case the note produced by respondent in the multilated form in

which it was presented, and in attempting to put the bank in the same position it was when the note was received by her as paid because the note could not be sued in its mutilated form, as the collateral which was assigned as security could not be read or made out from the note in its present form, and none of it was presented with the note.

(5) His Honor erred in disallowing the application of a part of the insurance money to the $300 note secured by a mortgage on the land and house covered by the insurance policy and in attempting to permit the bank to collect this mortgage debt, when in the same decree he directed the land to be sold under foreclosure of another mortgage.

(6) His Honor erred in overlooking the fact that this suit was brought to foreclose a note and mortgage for $1,-705, to which had been applied $276 of the insurance money, and in holding the bank to this payment after having held that the application of the insurance money to the $2,325 note was error, from which error the $276 credit was obtained, and after respondent had signed the note of $1,429 payment claimed by bank at the time, thus crediting the note sued on with $276 twice; once in the total insurance money and once in the allegation of the complaint based on the application of this sum as made by the bank.

(7) His Honor should have given the bank credit for the insurance premium paid by it for two years, $53.50, as it was paid by the bank to procure the insurance, and should properly be deducted from the total amount of insurance.

*Messrs. Efird & Carroll,* for appellant.

*Mr. E. L. Asbill,* for respondents, cites: *Application of proceeds of mortgaged property:* 104 S. C., 519; 38 S. C., 507; 20 S. C., 542; 27 S. C., 44; 32 S. C., 277; 37 S. C., 200; 73 S. C., 181.

March 20, 1928.

The opinion of the Court was delivered by Mr. Acting Justice J. Wm. Thurmond.

This action was instituted by the Bank of Swansea against Annie Williams, on a note and mortgage, dated May 8, 1920, due October 1, 1920, for $1,705, executed by Mrs. Annie Williams to A. P. Jackson, and recorded December 3, 1920, at Lexington. The defendants are Annie Williams, F. E. Huffman, A. P. Jackson, and Batesburg Cotton Oil Company. Mrs. Annie Williams was the only defendant that answered. The mortgage covered 103 acres of land, fully described in the complaint.

A. P. Jackson executed to the Bank of Swansea, on May 27, 1920, his note for $1,705, payable October 1, 1920, and assigned as collateral the note and mortgage aforesaid of Mrs. Annie Williams to him for $1,705.

January 22, 1920, Mrs. Annie Williams and F. E. Huffman executed a note to P. J. Williams for $300, payable November 1, 1920. P. J. Williams indorsed this note, which was secured by mortgage of 103 acres of land, the same as that above.

A policy of insurance was issued against loss by fire to Mrs. Annie Williams on a house located on the said 103 acres of land with a loss payable clause to the Bank of Swansea for the period beginning June 17, 1923, and ending June 17, 1924.

Mrs. Annie Williams executed a note to the Bank of Swansea on December 3, 1921, for $2,325.

The house on the land mortgaged was burned and the insurance money, $1,250, was paid to the Bank of Swansea in August, 1923.

The bank applied the insurance money on a note for $2,-325, covering all the indebtedness of the defendant Mrs. Annie Williams to said bank; but this note included other indebtedness and obligations besides the mortgage indebtedness due on the $1,705 note and mortgage, and some of the obligations evidenced by the $2,325 note were unsecured, and the insurance money was applied as aforesaid by the

bank on the whole indebtedness. The foreclosure proceeding in this case is to collect the balance due said bank on the note and mortgage on said tract of land for $1,705, executed by Mrs. Annie Williams to A. P. Jackson, and by him assigned to the bank. There is only one cause of action stated in the complaint, and that is based on the note and mortgage for $1,705 aforesaid. At the close of the testimony, the plaintiff attempted to amend his complaint so as to demand judgment on the other obligations claimed by it against Mrs. Annie Williams, but the trial Judge in his discretion refused to allow the amendment, and this Court cannot say that his discretion therein was abused. The findings of fact and conclusions of law by the Circuit Judge on the controverted questions in the case were decided in favor of Mrs. Annie Williams.

From the decree of the Circuit Judge, the plaintiff has appealed to this Court, and served seven exceptions, which raise practically three issues:

(1) As matter of law, should the insurance money have been applied to the said mortgage indebtedness of Mrs. Annie Williams to the Bank of Swansea, or did said bank have the right to apply said insurance money on the $2,325 note.

The case of *McSween v. Windham*, 104 S. C., 519; 89 S. E., 500, is conclusive against the plaintiff on this point.

(2) Did Mrs. Annie Williams waive the application of the insurance money to the $2,325 note to said bank? Waiver is a voluntary relinquishment of a known right. *Crosswell v. Connecticut Indemnity Ass'n*, 51 S. C., 476; 29 S. E., 236; 40 Cyc., 252.

The trial Judge found in favor of Mrs. Annie Williams on this question, and this Court cannot say that the finding was against the clear preponderance of the evidence.

The matters referred to in exceptions 5 and 7 are taken care of at folio 70 of the Court's decree, and the rights of the plaintiff are fully protected by that decree.

(3) Raises the question of duplicate credit to Mrs. Annie Williams. Exception 6 contends that Mrs. Annie Williams was given a duplicate credit of $276, but this contention of the plaintiff cannot be sustained, and the amount found by the Circuit Judge to be still due on the $1,705 note and mortgage appears to be practically correct; hence the judgment of the lower Court is affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This is an action to foreclose a mortgage of real estate given by the defendant Annie Williams to the defendant A. P. Jackson to secure her note for $1,705, dated May 8, 1920, due October 1, 1920, payable to him. On May 27, 1920, A. P. Jackson made his note to the Bank of Swansea for $1,705, due October 1, 1920, and assigned as collateral the note and mortgage above described from Annie Williams to himself. Prior to these dates, on January 22, 1920, Annie Williams, with another, had given a note to P. J. Williams for $300, payable November 1, 1920, and had secured it by a mortgage upon the real estate afterwards mortgaged to A. P. Jackson. P. J. Williams indorsed this note in blank, assigning it to the Bank of Swansea. So that, at the time the loan of the bank to Jackson had been consummated, the bank had both the $1,705 mortgage and the $300 mortgage. This was on May 27, 1920.

In November, 1921, Annie Williams, having become indebted to the bank in other sums, upon obligations either personally contracted or assumed by her, consolidated all of her obligations, including the two mortgages above described, into a note to the bank for $2,325, due January 1, 1922, with 8 per cent. interest and discount. That was in form a collateral note, and stated upon its face that the maker had deposited as collateral security therefor real estate mortgages as per list attached which included the two mortgages above described. Strictly speaking, Annie Williams, being

the mortgagor upon each of these mortgages, both of which were at that time held by the bank, was not in a position to assign either one of them; but manifestly the intent was that they should be held by the bank as security for the $2,325 note then executed.

On May 17, 1922, Annie Williams made a payment from cotton upon the $2,325 note of $303.94 and on August 12, 1922, of $74.13. In June, 1923, Annie Williams took out a policy of insurance upon the dwelling house which was upon the mortgaged premises for $1,250, the loss, if any, being made payable to the Bank of Swansea as mortgagee.

In July, 1923, the dwelling house was burned and the insurance, $1,250, was paid to the bank on August 6, 1923. In February, 1924, after the insurance money had been collected by the bank, Annie Williams and the bank had a settlement in which it was ascertained that she owed the bank upon the consolidated note of $2,325 a balance of $1,429, for which she gave the bank a new note with the same agreement that the two mortgages should continue as security therefor. The balance was evidently ascertained by calculating the interest on the $2,325 note from January 1, 1922, to August 6, 1923, when the insurance money was received by the bank, and deducting it (less the premium which had been paid by the bank) from the $2,325 plus interest, and calculating interest upon the balance from August, 1923, to February, 1924, the date of the settlement.

When the new note for $1,429 was given by Annie Williams, the $2,325 note was canceled and surrendered by the bank to her. It was presented by her at the reference in mutilated condition. The bank concedes that it made an error in this calculation, in omitting the cotton credits of $303.94, as of May 17, 1922, and $74.13, as of August 12, 1922. Allowing these credits, the balance should have been $1,049.87, instead of $1,429, and the amount due upon this

true balance, as of August 5, 1926, the date of the circuit decree, should be $1,257.87.

I think that, when Mrs. Williams and the bank had a settlement in February, 1924, after the insurance money had been received by the bank, and by agreement it was applied to the $2,325 note, which represented the total of her obligations, and a new note taken for the balance, the transaction constituted an account stated, which she can attack only upon the ground of fraud or mistake. She has made out a case of mistake as to the cotton payments which the bank concedes.

Clearly, it was intended by both parties that the balance ascertained to be due at the time of the $2,325 note, and later at the time of the $1,429 note, should be secured by the outstanding two mortgages, both of which the bank was entitled to foreclose for the corrected balance above stated of $1,257.87, with interest and attorney's fees. It asks only for the foreclosure of the $1,705 mortgage, and, of course, is limited to that.