## In re McELMURRAY.

### No. 4378.

District Court, E. D. South Carolina, Aiken Division.

Oct. 9, 1942.

Hendersons & Salley, of Aiken, S. C., for Mrs. McElmurray.

W. M. Smoak and M. A. Wilder, both of Aiken, S. C., for Pillsbury Flour Mills Co.

TIMMERMAN, District Judge.

This matter is before me on a petition to review and reverse an order of the Referee in Bankruptcy adjudging the validity of a certain real estate mortgage. The controversy is between Pillsbury Flour Mills Company, a creditor of the bankrupt, and Mrs. Lilliam B. McElmurray, the assignee of a purchase money real estate mortgage made, executed and delivered by the bankrupt to O. B. Whatley on February 8, 1937.

Relevant and explanatory facts forming the background of the issues made, and about which there seems to be little if any question, are as follows:

The note which the above referred to mortgage secured was executed and delivered the same day that the mortgage was executed and delivered—November 8, 1937—and it obligated the bankrupt, Edward Warren McElmurray, Jr., to pay to O. B. Whatley, or order, the sum of Three Thousand Five Hundred Dollars ($3,500), in installments of Three Hundred and Fifty Dollars ($350) per year until the full amount of the indebtedness should be paid, with interest from date at the rate of 5% per annum, payable semi-annually, and with the provision that the entire amount should become due and payable in case of default in the payment of either principal or interest as the same became due. The mortgage, which was duly recorded two (2) days after its execution, covered a certain lot of land, with building thereon situate, in North Augusta, County of Aiken, State of South Carolina. Among other covenants in the mortgage there was one obligating the mortgagor to insure the building on said lot from loss or damage by fire and assign the same to the mortgagee, his executors, administrators or assigns, with the proviso that in case the mortgagor should neglect to insure said building the mortgagee, his executors, ad-

ministrators or assigns could do so and have reimbursement therefor under the mortgage. The building was largely destroyed by fire on April 16, 1941, while the policy of insurance was in force. The fire loss was adjusted at $3,143.97 and paid by the check of the insurance company on or about June 13, 1941. This check was made payable to the mortgagor, the mortgagee and a fire loss adjuster. The check was endorsed by said parties and deposited in a bank to the credit of O. B. Whatley, the mortgagee. The mortgagor was adjudged a bankrupt on March 12, 1942, approximately 11 months after the fire and 9 months after the adjustment and payment of the fire loss. July 17, 1941, for value received, the original mortgagor, O. B. Whatley, transferred and assigned said mortgage and the note it secured to Lillian B. McElmurray without recourse. This assignment was duly recorded in the Clerk of Court's office for Aiken County, South Carolina, July 21, 1941, or 7 months and 3 weeks before the mortgagor was adjudged a bankrupt.

Pillsbury Flour Mills Company contends that the receipt of the funds arising under the insurance policy by the mortgagee amounted to a payment pro tanto on the mortgage indebtedness, and that the assignee of said note and mortgage could claim nothing thereunder further than remained due thereon after deducting the full amount of the insurance fund.

Mrs. McElmurray contends that the full amount of the insurance fund was never credited on the mortgage indebtedness, that part of said fund, $1,000, was by an agreement between the mortgagor and mortgagee applied on the cost of reconstructing the burned building, and that said parties had the legal right to make such application of the insurance fund.

By way of a contention counter to that of Mrs. McElmurray, Pillsbury Flour Mills Company insists that the evidence does not establish such an agreement, in the first place, and that, in the second place, any such agreement, if made, was null and void for the reason that the law applied the fund on the debt, and the parties could not contract otherwise.

On the issue of whether the mortgagee and mortgagor agreed on the application of the insurance fund before its receipt, the Referee found as a fact that the mortgagor and the original mortgagee did agree, after the fire and before the payment of the fire loss by the insurance company, that such portion of the insurance fund as might be necessary therefor should be used in replacing the burned structure; and he further found that the sum of $1,000 of said fund was so used in accordance with said agreement. I am convinced that the evidence warrants the conclusion reached by the Referee, and I therefore affirm his ruling in that respect.

In response to a question by the Referee as to how much of the insurance money Mr. Whatley, the mortgagee, agreed for him to use in reconstructing the burned building, the mortgagor (bankrupt) said: "He agreed to let me have all back if I put it in the business but I used only $1000.00 of Mr. Whatley's insurance. I got the balance from my daddy. And he took up the note in the bank." He further testified:

"Q. Was that agreement made before hand between you and Mr. Whatley that he would let you have the money back? A. Just after the fire."

In the course of the testimony of Mr. Whatley, the original mortgagee, the following occurred:

"Q. Did you and Mr. McElmurray, Jr., have any understanding or agreement about what was done?

"Mr. Smoak: Mr. Wilder and I made the same objection.

"Q. Have you any agreement about what you could do with insurance money before you got the check? A. He wanted to repair the building and asked if I would advance him money from time to time, and I agreed. We came to your office and discussed this before it was done.

"Q. How much money did you advance to him for the repair of the building out of the insurance money? A. $1000.00.

"Q. Now, later on that was agreed on between you and him,—he would use that $1000.00 in the repair of the building? A. Yes, sir.

\*       \*       \*       \*       \*

"Q. The amount you advanced was how much? A. One Thousand Dollars.

"Q. And about how soon after you got the insurance money was it before the work began? A. He had already started repairing the building before the check came in.

\*       \*       \*       \*       \*

"Q. How much did you find the principal, interest and insurance premiums that

you paid on the policy under this mortgage amounts to on the date you received the fire insurance? A. $3543.20.

\* \* \* \* \*

"Q. You had an agreement with Mr. McElmurray, before you deposited or cashed the check, to let him keep $1,000.00 to restore the building?

(Objection by Counsel)

"Q. And that your mortgage was to lend (stand) at same face value? A. No specific amount was agreed on. I would make advances from time to time as improvements progressed. After he drew the $1,000.00 he had his daddy take up the mortgage.

"Q. Was it the agreement between you and him your mortgage would remain for the full amount including what you had let him keep to make repairs? A. Yes, sir. If he had made all the improvements necessary, it might take the entire check.

"Q. You might have let him take the whole check?

"Mr. Referee: It was your wish to let him put it all in the building?

"A. Yes. I felt like I wanted to help him and he did not ask for additional advances after the two $500.00 checks were given.

"Q. Your original mortgage was to remain in full force? A. Yes."

Having reached the conclusion that the Referee was warranted in holding that the mortgagor and the original mortgagee agreed to apply part of the insurance fund to the repair of the burned building and to apply the rest of said fund to the mortgage debt, before receipt of the fund, I now turn to the question of whether the agreement is valid as between themselves and as against creditors of the mortgagor.

■■ Ordinarily the question here presented would be determined by the law of the State, but I have been unable to find any South Carolina decision settling the exact question at issue. It is quite true, as contended by counsel for Pillsbury Flour Mills Company, that an assignee of a non-negotiable chose in action has no rights superior to those held by the assignor at the time of the assignment, and that the assignee of such an instrument takes it subject to all equities and defenses that might have been asserted against the assignor. Woodrow v. Frederick, 133 S.C. 431, 131 S.E. 598.

■ It is equally clear that a payment on a mortgage debt satisfies the lien of the mortgage pro tanto; and that "when the application is once made, the parties cannot in any way change it, so as to affect the intervening rights of third parties, not consenting." McCown v. Westbury, 52 S.C. 421, 29 S.E. 663, 665, 30 S.E. 142.

In the case last cited, the mortgagor paid the mortgagee the sum of $250 on the mortgage debt. Later they agreed for the mortgagee to return the payment and leave the debt as it was before, but in the meantime the mortgagor had conveyed the mortgaged property to another person. The Court, in this situation, held that the interests of the alienee of the property would be adversely affected, and that the payment should stand as a credit on the mortgage debt. "Undoubtedly a creditor, having two or more claims against a debtor, has the right, in the absence of any direction by the debtor at the time of payment, to apply the payment as he chooses, as a general rule, and may exercise this right at any time before judgment or verdict. Bell v. Bell, supra [20 S.C. 34, 45]." McCown v. Westbury, supra. The payment referred to in the foregoing citation did not arise from a sale of mortgaged property.

In the instant case the parties agreed how the insurance money should be applied, before it was received, viz, that $1,000 or more of it to the restoration of the mortgaged property, and the rest of it on the mortgage debt. It is the validity of this agreement that the Pillsbury Flour Mills Company questions; and in support of its contention cites: Summer v. Kelly, 38 S.C. 507, 17 S.E. 364; McSween v. Windham, 104 S.C. 508, 89 S.E. 500, and Bank of Swansea v. Williams, 144 S.C. 130, 142 S.E. 234.

In the Summer case, the defendant Kelly gave the plaintiff a chattel mortgage to secure advances to be made during the ensuing crop year, not exceeding $650. The advances so made amounted to $586. The defendant sold parts of the mortgaged crops from time to time and turned the proceeds thereof over to the plaintiff. The amount thus paid was sufficient to discharge the debt secured by the mortgage. There was no agreement between the parties as to how the payments should be applied. The plaintiff, the holder of the mortgage, applied part of said payments

to an unsecured debt. The Court held, inter alia, that the "payments must be applied to the payment of the amount due for advances made under the said mortgage; that the said mortgage is fully paid and satisfied; * * * and that the plaintiffs in the action are not entitled to the possession of the property described in the complaint." [38 S.C. 507, 17 S.E. 365.] This holding was predicated on the finding of fact that the "sums so paid arose from the sale of property covered by the mortgage, and that *there was no agreement between the parties as to application of payments.*" (Emphasis added).

There can hardly be any doubt about the proposition, under South Carolina law, that the proceeds arising from the sale of mortgaged property, when it reaches the hands of the mortgagee, must be applied to the mortgage debt, in the absence of an agreement to do otherwise. Thatcher v. Massey, 20 S.C. 542; Whilden v. Pearce, 27 S.C. 44, 2 S.E. 709; Ellis v. Mason, 32 S.C. 277, 10 S.E. 1069, and McSween v. Windham, 104 S.C. 508, 89 S.E. 500.

In none of these cases just cited did the mortgagor and mortgagee agree upon a different application of the funds arising from the sale of the mortgaged property. What the court might have said had there been an agreement for a different application of the funds, with no intervening third party's interest to be affected, may well be surmized. Certainly no South Carolina Court has yet said that in such circumstances the parties could not agree upon the application of the funds.

Bank of Swansea v. Williams, supra, involved the application of funds arising from a fire insurance policy, covering a building on the mortgaged property. There was no agreement between the parties as to the application of the funds, and the mortgagee having received the insurance funds, without agreement on the part of the mortgagor for a different application, the Court held, upon the authority of McSween v. Windham, supra, that such funds should have been credited on the note secured by the mortgage over the premises from which the insurance arose. There was an issue of waiver, but the Court held that the mortgagor, or rather the person standing in the place of the mortgagor, had not voluntarily relinquished her known right to have the insurance fund applied to the mortgage debt. It was thereby implied that the mortgagor might have waived the application of the funds to the mortgage debt; and surely if a mortgagor may waive the right to have funds so arising applied in satisfaction of the mortgage debt, he legally can contract thereabout. Otherwise, we would have an anomaly. In the Bank of Swansea Case there was no agreement as to the application of the insurance money, and in that situation the Court simply held that the mortgagee was bound to credit the fund on the debt secured by the mortgage.

It was the owner's interest that was insured by the policy of insurance in question and not the mortgagee's interest Rawl v. American Cent. Ins. Co., 94 S.C. 299, 77 S.E. 1013, 45 L.R.A.,N.S., 463, Ann. Cas.1915A, 1231. However, in view of the loss payable clause in the policy of insurance covering the mortgaged premises, the mortgagee had the right to demand that the insurance fund be applied to the debt secured by the mortgage (Hall Bldg. Corp. v. Edwards, 142 Va. 209, 128 S.E. 521, 523); but does this imply that the mortgagee had no legal right to contract with the mortgagor for a different application of the fund, say for instance to apply all or part of it to the restoration of the destroyed building over which the mortgage existed? In Hall Bldg. Corp. v. Edwards, supra, it is well said: "Payment of a *debt* involves both tender by the debtor and acceptance by the creditor, with the intention on the part of the debtor to pay the debt in whole or in part, and so accepted as payment by the creditor; but a debtor may place his money in his creditor's hands for a different purpose, with an understanding that a particular debt is neither thereby paid nor the security therefor released, and the creditor cannot be held to have released his security by such an act. Whether or not a lien debt has been paid by a deposit of the money with the creditor by the debtor is always a question of intent, which is a question of fact to be determined from the evidence. There is doubtless a presumption of payment, but it is not a conclusive presumption."

More directly in point are the cases of Howe v. Lewis, 14 Pick., Mass. 329, 331, and Armstrong v. Price, 203 N.C. 833, 167 S.E. 77. In the Howe case it is said:

"It is equally clear, that actual payment of the mortgage has never been made and completed, although a greater part of the money due has been deposited in the hands of the executor, which he will be bound

to appropriate towards the payment and discharge of the mortgage. But as matters now stand, the mortgage cannot be considered as paid; for it was agreed by the parties at the time the money was deposited, that it should not discharge the mortgage."

"The precise question here presented was decided in Johnson v. Valido Marble Company, 64 Vt. 337, 25 A. 441. There had been a destruction of a building by fire, and the insurance thereon had been paid by the insurer, but the money arising therefrom had been used in the erection of new buildings; and the court held that the original mortgage had not been satisfied, and in this connection said: 'It is further suggested on behalf of the defendants that the receipt and indorsement of the insurance checks by the complainant and their deposit to her credit in the ordinary course, operated as a payment of the debt secured, and that, in subsequently transferring the money to the corporation by her checks, she made a new loan which stands unsecured, or at least subordinate to the defendant's mortgage. But before this was done, the complainant, acting for herself, had agreed with her husband, acting for the corporation, and by authority expressly given, that the insurance money should be taken by the company for use in the erection of new buildings, and what was done must be considered in connection with this fact. The insurance was payable to the complainant, and the checks for it would in the regular course of business be made payable to her order, and her indorsement would thus become necessary to enable the company to receive the money. This would not operate as a payment of the complainant's mortgage in the absence of any intention on the part of the parties to the mortgage that it should so operate; certainly not in the face of their actual agreement to the contrary.' 19 R.C.L. § 222, p. 438; 30 Cyc. 1181.

"This insurance money, representing the loss by fire, constituted a fund which the creditor here had the right to have applied in satisfaction of the debt, and the consequent release of the incumbrance; but he was not compelled to insist upon his rights so to apply the fund and had the power to waive it. So, also, the debtor here had such an interest in this fund as that, with his creditor's consent, instead of applying it to the payment of his debt, it might be invested in the proposed new building, and with his creditor's consent he could exercise his option of continuing his obligation, leaving it unliquidated and having the fund differently applied. In our view of the facts, it is perfectly clear that the debt has never been fully paid from the insurance funds which were differently applied by mutual consent, and hence it follows that the deed of trust is a valid and subsisting incumbrance so that we are fully in accord with the view of the trial court." 142 Va. 209, 128 S.E. 524.

In the case of Armstrong v. Price, supra, in compliance with a covenant contained in a deed of trust executed to secure the payment of a bond in the sum of $12,000, a fire insurance policy in the sum of $10,000 covering a three-story brick building on the premises conveyed in the deed of trust was assigned to the creditor. The building burned and the insurance company paid the sum of $10,000 by a check payable to the order of the debtors and the creditor. The amount due at that time was slightly less than $10,000. Some months before the fire another creditor of the debtor secured a judgment in a substantial amount against said debtors. The creditor holding the deed of trust as security agreed with the debtors that the insurance money should not be credited on the debt, but that it should be used in the erection of another building on the premises covered by the deed of trust under the supervision of the secured creditor. The second creditor holding the judgment against the debtors, about a year after the fire, caused an execution to be issued on his judgment against said debtors under which the property in question was sold to one J. S. Armstrong for the nominal sum of $10. Armstrong brought an action to have the deed of trust adjudged to be a cloud on his title and to order the same cancelled of record, on the ground that the bond secured by said deed of trust had been paid and satisfied in the collection of said fire insurance money. Upon the issue thus made, the Court said [203 N.C. 833, 167 S.E. 79]:

"On the foregoing facts, shown by all the evidence at the trial, the jury could not have found that the money collected from the insurance companies to cover the loss resulting from the destruction by fire of the three-story brick building was, in fact, or should have been, as a matter of law, applied to the payment of the bond secured

by the deed of trust executed by W. E. Grigg and others to Julian Price, trustee.

"J. W. Armstrong, whose judgment against W. E. Grigg and Kenneth Grigg was docketed subsequent to the registration of the deed of trust, had only a lien on the land conveyed by the deed of trust. This lien was subject to the provisions of the deed of trust. He had no right, title, or interest in the policies of fire insurance, or in the proceeds of said policies. Byrd v. [Pilot Fire] Ins. Co., 201 N.C. 407, 160 S.E. 458; Street v. [Beaufort Fish, Scrap &] Oil Co., 201 N.C. 410, 160 S.E. 460. Such proceeds, when collected from the fire insurance companies, were subject to the agreement entered into by and between W. E. Grigg and Kenneth Grigg and the Jefferson Standard Life Insurance Company, that they should not be applied to the payment of the bond secured by the deed of trust, but should be expended in the construction of a new building to take the place of the building which had been destroyed by fire. Jones on Mortgages (8th Ed.) vol. 1, § 503.

"The plaintiff, J. S. Armstrong, as purchaser of the land described in the complaint, at the sale by the sheriff of Lincoln county under an execution to satisfy the judgment, is not entitled to the relief sought by him in this action. There was no error in the judgment dismissing the action as of nonsuit. The judgment is affirmed."

█ In the absence of a controlling declaration emanating from the Supreme Court of South Carolina, I am content to adopt the reasoning of the Supreme Court of North Carolina in the Armstrong Case. It supports the conclusions reached by the Referee in Bankruptcy in the instant case. For additional authority in consonance with the North Carolina case, see Kirkland v. Arnold, 178 Ala. 227, 59 So. 162, and Huey v. Ewell, 22 Tex.Civ.App. 638, 55 S.W. 606, 608. It is held in the last mentioned case that the mortgagor, "having fully restored the property to the condition it was before the fire, is entitled to collect the insurance". This upon the theory "that the object of the insurance was to safeguard the security, and provide against the loss of the same to the mortgagees."

The order of the Referee in Bankruptcy is affirmed.