**GARLAND COAL & MINING CO. v. HELVERING, Commissioner of Internal Revenue.**

**No. 6233.**

United States Court of Appeals for the District of Columbia.

Argued Dec. 4, 1934.

Decided Jan. 14, 1935.

William R. Spofford, of Philadelphia, Pa., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Robert H. Jackson, William E. Davis, and Louise Foster, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner is a Delaware corporation. In 1926 it issued $175,000 of bonds secured by a mortgage upon its properties located in Arkansas and Oklahoma. The entire issue was sold at par. A part of the bonds were designated A and a part B bonds.

On January 1, 1928, $60,000 of A bonds and $100,000 of B bonds were outstanding. During that year petitioner "acquired $100,000 principal amount of B bonds by purchase at a cost of $47,039.80. The B bonds were all acquired in one transaction and the purchase price was a lump sum for the lot. The petitioner held these bonds in its treasury throughout 1928." In February, 1929, petitioner delivered the bonds to the trustee for cancellation. Simultaneously, the A bonds were paid off at par. Petitioner did not in its 1928 return report the difference between the issuing price and the redemption price of the B bonds as taxable income. The Commissioner included it. The Board of Tax Appeals approved the Commissioner's action, and this appeal was taken.

The single question we have to decide is whether a corporation, which has purchased its own bonds at a price less than the amount at which they were sold, and thereafter held them in its treasury until the following year, realized taxable income in the year of purchase. In the case of United States v. Kirby Lumber Co., 284 U. S. page 1, 52 S. Ct. 4, 76 L. Ed. 131, the Supreme Court held that gain—hence income—resulted where a corporation purchased and retired some of its own bonds for less than the amount received for them when issued.

The decision approved a regulation of the Treasury Department as follows: "If, however, the corporation purchases and retires any of such bonds at a price less than the issuing price or face value, the excess of the issuing price or face value over the purchase price is gain or income for the taxable year" (article 545 (1) (c) of Regulations 62, Revenue Act 1921). The same regulation was in effect when the return in the instant case was made, and the argument here is based upon the language of this regulation. Petitioner calls our attention to the fact that it provides that the bonds shall be both purchased *and retired* in order that the regulation shall be effective. Here, we are told, the bonds were purchased in 1928, but were not retired until 1929, and, consequently, petitioner says, no gain resulted until the latter year. But even if we concede as correct the basis of the argument, the facts do not sustain the conclusion, for here the record discloses that in its balance sheet filed with its 1928 return, petitioner subtracted $100,000 from its previous bonded liability, showing as of the end of the taxable year under the item "Long-term debt" only the then outstanding A bonds. This we think tends to show that the object of the purchase was to retire the bonds, and this inference is not weakened by the further statement that the bonds were then retained in petitioner's treasury. Undoubtedly, a corporation may purchase its own bonds as an investment and reissue them, but in such a case the intention to keep the indebtedness alive must be clearly shown, for the general rule is that where an indebtedness is in fact paid, the evidences of it cannot be reissued for a new or different debt. The test in such cases is the intention of the parties at the time of the transaction. "Ordinarily the rule is that payment by one primarily liable on a note or bond extinguishes the obligation thereof, irrespective of his intention to the contrary; but in this case whether there was a payment or merely a transfer of the bonds is the exact question in issue. This, we think, depends upon the intention of the parties. Hall Bldg. Corp. v. Edwards, 142 Va. 209, 128 S. E. 521; Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868." Virginia Securities Corporation v. Patrick Orchards (C. C. A.) 20 F.(2d) 78, 84. And see, also, Jones on Corporate Bonds and Mortgages (3d Ed.) § 325.

And so, in this case the question is, the intention of petitioner when it redeemed its bonds. And this, from all that appears was clearly, as we think, to pay the bonds and retire them, for that is actually what did happen, and there is not a word of evidence to show a different or contrary intention at any other time. The fact that the intention was also to postpone actual surrender and cancellation to a subsequent year, rather than the year of the purchase, does not affect the question; nor keep the bonds alive. In short, if the acquisition of the bonds from the holder was for the purpose of paying the debt, there could not at the same time be an intention to keep the debt alive, and without that intention the transaction was a completed one and the bonds, even though held in the treasury, were not subject to reissue, and were as much "retired" as if they were actually surrendered and marked "cancelled." In that view it is not necessary to consider whether the Commissioner's regulation, approved in the Kirby Case, was as far reaching as petitioner contends, because, as we have seen, the intention to cancel the bonds, as in fact was done at the beginning of the new year, would bring the transaction within the exact terms of the regulation.

But we think it at least doubtful whether the Commissioner's regulation should be construed as petitioner would construe it. To say, as the regulation does say, that when bonds are purchased and retired at less than the selling price, the excess is income, is by no means to say that when they are purchased, but not retired, it is not income; and if the regulation must be so construed, the question whether it violates the terms of the statute (Revenue Act 1928, § 22 (a), 26 USCA § 2022 (a) would at least be arguable, but we have no need to pass upon that question here. Enough appears to convince us beyond any reasonable doubt that when petitioner purchased the $100,000 of bonds, it purchased them for cancellation and retirement and not for the purpose of keeping them alive for reissue, and the mere fact that it held them in its treasury until the commencement of the next year does not, in the absence of evidence of a clear intention to hold them for investment, militate against this conclusion. In this view, the Commission and the Board were correct.

Affirmed.