*Decision will be entered under Rule 50.*

## TERMINAL INVESTMENT COMPANY, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110002.  Promulgated November 22, 1943.

*John H. Freeman, Esq.*, for the petitioner.
*Samuel G. Winstead, Esq.*, for the respondent.

1006

1008

1010

OPINION.

ARNOLD, *Judge*: On August 1, 1933, the petitioner had outstanding $495,000 par value of its bonds and on that date semiannual interest coupons at the rate of 6 percent, totaling $14,850, were payable but were not paid. Petitioner accrued this interest on its books and took a deduction in that amount on its income tax return for 1933. On February 1 and August 1, 1934, additional interest coupons, totaling $29,700, became payable but were unpaid. This interest obligation was also accrued and deducted on petitioner's 1934 return. In 1935 petitioner underwent a reorganization under section 77B of the Bankruptcy Act and in such reorganization the past due interest coupons, totaling $44,550, were ordered to be canceled. In addition to other modifications in the bonds effected by the reorganization including extension of the redemption date to on or before August 1, 1944, and adjustment of the future interest rate, there were attached to the bonds nondetachable, noncumulative scrip certificates, calling for limited annual payments, subject to certain contingencies set forth in detail in our findings, which, if all the contingencies were met and none of the bonds were redeemed until the final redemption date, would eventually equal two-thirds of the past due and canceled interest, or $29,700. No payments upon the scrip certificates for the years 1935 through 1938 were made, because the contingencies precedent to payment were not met in those years. Because of the noncumulative feature of the scrip certificates, no obligation to pay was carried over to subsequent years. Also in the years 1935 through 1938 the petitioner redeemed some of its bonds with the scrip certificates attached thereto. At the beginning of 1939 the petitioner had $393,000 par value of its bonds outstanding, with unmatured scrip certificates attached which would have totaled $15,720 if none of the bonds were redeemed prior to August 1, 1944, and if all of the contingencies precedent to payment upon the scrip certificates had occurred in the years 1939 through 1944.

During the first three months of 1939 the petitioner borrowed sufficient funds to enable it to purchase and retire at that time all of its outstanding bonds. The amount expended for this purpose was $390,920, or $2,080 less than the par value of the bonds. The petitioner reported the $2,080 difference as taxable income upon its return for 1939. The scrip certificates, being nondetachable, were surrendered with the bonds when redeemed. The respondent determined that the petitioner realized income in 1939 in the amount of $15,720 from the surrender and cancelation of the scrip certificates.

The parties have argued this case along several alternative and mutually exclusive lines, each line of argument being premised upon a different view of the effect of the reorganization and of the nature

of the scrip certificates. To clarify these arguments, we deem it necessary at the outset to determine from the facts what effect the reorganization had upon the past due interest obligation and the nature of the obligation, if any, arising from the scrip certificates.

Terminal's obligation to pay interest on the bonds was fixed and determined when the interest coupons fell due on August 1, 1933, February 1, 1934, and August 1, 1934, and such interest was, therefore, properly accrued upon the books and taken as deductions in the respective years. Sec. 43, Internal Revenue Code; *United States* v. *Anderson*, 269 U. S. 422 (1926); *Newaygo Portland Cement Co.*, 27 B. T. A. 1097. The plan of reorganization refers to the unpaid interest installments and states that the only provision being made therefor is the attachment of scrip certificates to the bonds "which will evidence a further payment of additional contingent interest * * * to be paid only out of net earnings," if sufficient. The decree of the bankruptcy court ordered that all of the interest coupons theretofore attached to the bonds be removed and canceled and that various changes be made in the bonds, including the attachment of the scrip certificates. In other words, the past due, fixed, and ascertainable obligation was canceled and partially converted into a highly contingent obligation, payable in future noncumulative installments out of net earnings only. In 1935, when the scrip was issued, no part thereof properly could have been accrued and deducted. Sec. 43, Internal Revenue Code; cf. *Lucas* v. *American Code Co.*, 280 U. S. 445 (1930); *United States* v. *Anderson, Supra; Stern-Slegman-Prins Co.* v. *Commissioner* (C. C. A., 8th Cir., 1935), 79 Fed. (2d) 289; *Prudence Securities Corporation* v. *Commissioner*, (C. C. A., 2d Cir., 1943) 135 Fed. (2d) 340; *American Hotels Corporation* v. *Commissioner* (C. C. A., 2d Cir., 1943), 134 Fed. (2d) 817, affirming 46 B. T. A. 629; *Concord Electric Co.*, 7 B. T. A. 1027. We must conclude that the 1933 and 1934 accruals and deductions were completely canceled and wiped out in 1935. The latter year is not before us and we need not consider whether the reorganization, by canceling the past due interest and the accruals and deductions dependent thereupon, could have given rise in that year to any taxable income.

Our conclusion that the past due interest obligation was wiped out in 1935 disposes of the contention of respondent to the effect that in 1939 there occurred a cancellation of a portion of the deductions taken in 1933 and 1934 and that the amount so canceled, to the extent of $15,720, must be restored to income for 1939. The accruals and deductions had already been completely canceled in 1935.

Our next preliminary consideration pertains to the nature of the scrip certificates and the obligation, if any, which arose therefrom. This must be gathered from the provisions of the scrip certificates

and all of the attendant facts and circumstances. As concluded previously, the bondholders' right to receive payment upon their past due interest coupons was terminated by the reorganization. Substituted therefor was a highly contingent undertaking to pay limited amounts out of future net earnings. The scrip certificates can not be said to have revived to any extent the obligation to pay the past due interest. This would have been inconsistent with the apparent purpose of the reorganization, which was to lighten the debtor's burden by relieving it of some of its financial obligations. No immediate obligation to pay arose out of the issuance of the scrip certificates, nor did any obligation arise in any year subsequent to their issuance, because the contingencies precedent to payment never occurred in any such year.

Furthermore. there was no acceleration provision in the event of redemption prior to the final expiration date. No such right is expressed in the pertinent documents and there are no data from which an intention to create such a right can be inferred. We are therefore unable to find any merit in arguments which would postulate such an acceleration as a basis for requiring that the petitioner include in its income for 1939 amounts which it was not then obligated to pay and which it might never be required to pay, even if the scrip certificates remained outstanding. Petitioner's income tax liability for 1939 must be determined in the light of the events which occurred in that year. Each taxable year must be treated as a unit. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359 (1931). "We must view the facts as they were and not as they might have been." *McConway & Torley Corporation*, 2 T C. 593, 596.

The manner in which the petitioner treated the scrip certificates upon its books, as described in our findings, is also not determinative of petitioner's taxable income for 1939, although reliance is placed thereon in the deficiency notice. Mere bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability. They can not alter the legal effect of transactions, nor create income where none in fact exists. *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216 (1937). The petitioner's "Accrual Interest Scrip Payable" account was evidently opened and maintained under a mistaken theory as to the legal effect of the scrip certificates.

The respondent relies most strongly upon *United States* v. *Kirby Lumber Co.*, 284 U. S. 1 (1931), which held that the taxpayer therein involved derived taxable income from the purchase at less than par of its bonds previously issued at par, to the extent of the difference between the par value of the bonds and their purchase price, this representing the increase in its net assets previously offset by the extinct obligation. Cf. *Helvering* v. *American Dental Co.*, 318 U. S. 322 (1943),

which emphasized the "increase in net assets" as the test of taxability in the *Kirby Lumber Co.* case. In the *Kirby* case the obligation was fixed and not contingent as here and the principle of the *Kirby* case was recognized by petitioner here when it reported as income the difference between the cost and par value of the bonds. It is apparent from the facts before us that the *Kirby Lumber Co.* case is not applicable for the purpose of determining whether the petitioner herein realized any income in 1939 from the receipt of the scrip certificates attached to the bonds redeemed in that year. The scrip certificates had given rise to no charge upon petitioner's assets when issued, nor had any such charge subsequently arisen therefrom, for at no time had petitioner become obligated to make any payments upon the scrip certificates. Consequently the surrender of the certificates with the bonds in 1939 did not, to any extent, increase petitioner's net assets.

Other authorities cited by the respondent, namely, *Helvering* v. *Jane Holding Co.* (C. C. A., 8th Cir., 1940), 109 Fed. (2d) 933; certiorari denied, 310 U. S. 653; rehearing denied, 311 U. S. 725; *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393; review dismissed (C. C. A., 6th Cir., 1933) 67 Fed. (2d) 985; *Beacon Auto Stores, Inc.*, 42 B. T. A. 703; and *Howard Paper Co.*, 43 B. T. A. 545, are also not in point. It is not necessary to discuss at length the effect which the Supreme Court's holding in *Helvering* v. *American Dental Co.*, *supra*, had upon these cases. Suffice it to say that they stem in principle from *United States* v. *Kirby Lumber Co.*, *supra*, and are distinguishable from the case before us in the same manner in which that case has just been distinguished.

The respondent also relies strongly upon section 19.22 (a)–14 of Treasury Regulations 103, which provides in part:

> The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. * * *

A corresponding provision has been in the income tax regulations since Regulations 94 under the Revenue Act of 1936. A substantially similar regulation was approved in *United States* v. *Kirby Lumber Co.*, *supra*.

Assuming the validity of the regulation, the question to be decided is whether, as the respondent contends, it is controlling in the factual situation before us. It is obviously inapplicable if, under the facts, no indebtedness was canceled in 1939.

The term "indebtedness" is not defined in section 19.22 (a)–14 of Regulations 103. It is defined, however, in almost identical language, both in section 19.27 (a)–3 of Regulations 103, pertaining to the divi-

dends paid credit, and in section 19.504–2, pertaining to the undistributed profits tax. As defined in these sections, "indebtedness" means "an obligation, absolute and not contingent, to pay on demand or within a given time, in cash or other medium, a fixed amount." It is reasonable to assume that the term was used in the section of the regulations now being considered in the same sense in which it was defined and used elsewhere in said regulations. See also the definition of "indebtedness" contained in *Gilman* v. *Commissioner* (C. C. A., 8th Cir., 1931), 53 Fed. (2d) 47, 50. It is obvious that the scrip certificates, because of their extreme contingency, could have given rise to no indebtedness, nor may they be treated as "obligations" within the meaning of the regulations, for "obligations," as therein used, must mean such obligations as have given rise to an "indebtedness."

The general language of the regulations relied on to the effect that the cancellation of indebtedness may give rise to income must also be considered as having been limited in its application by the recent case of *Helvering* v. *American Dental Co.*, *supra*, wherein it was held that the gratuitous cancellation of an obligation must be treated as a nontaxable gift and not as an accesion of taxable income. It is well settled that a "promise of future money payments wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty" has no ascertainable fair market value. *Burnet* v. *Logan,* 283 U. S. 404, 413 (1931); *Cassatt* v. *Commissioner* (C. C. A., 3d Cir., 1943), 137 Fed. (2d) 745; *Bedell* v. *Commissioner* (C. C. A., 2d Cir., 1929), 30 Fed. (2d) 622, 624. The nature of Terminal's scrip certificates was such that they could have had no ascertainable fair market value either in 1935, when they were first issued, or in 1939, when those with which we are now concerned were finally surrendered and canceled, and it can not be said that any part of the consideration which petitioner paid for its bonds can be apportioned to scrip certificates having no value. Under these circumstances, we must conclude that the scrip certificates were surrendered without consideration. Under *Helvering* v. *American Dental Co.*, *supra*, such a gratuitous cancellation can not give rise to taxable income.

In view of our above analysis of the facts and the law, we conclude and hold that the respondent erroneously determined a deficiency with respect to petitioner's receipt of its scrip certificates in 1939.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LEECH, TURNER, and KERN, *JJ.*, concur only in the result.