## TENNESSEE CONSOLIDATED COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9786.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1944.

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner, of Washington, D. C., on the brief), for petitioner.

Harold C. Wilkenfeld, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Robert N. Anderson, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HAMILTON and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Petitioner in 1920, using the device of a deed of trust given as security for the performance of the obligation, issued five hundred $1,000 "Purchase Money First Lien Six Per Cent Sinking Fund Gold Bonds," redeemable upon any interest day at par and accrued interest, the entire issue maturing in 1940. Annual sinking fund payments to the trustee were required, such payments measured at the rate of five cents per ton of coal actually mined from the property placed in lien, with a minimum guaranteed. The annual sinking fund reserve could be used for the purchase of bonds offered at less than par, or if none were thus obtainable the fund could be used to retire bonds selected by lot. The holders of the bonds were prohibited from instituting foreclosure proceedings, but on default in either the payment of principal or interest for a period of six months, the trustee was authorized to take possession of the premises in lien and upon written request of a majority of the holders in amount of outstanding bonds, the trustee was authorized to declare the principal of all outstanding bonds, if not already due, to be due and payable immediately.

Petitioner, in a limited way, dealt in corporate securities and carried on its books an investment account. In 1927, petitioner began purchasing in the open market, its outstanding bonds, and crediting such purchases to the investment account, which practice it has since continued. Some of these bonds were delivered to the trustee and cancelled by him and retired out of the sinking fund and such transactions were reflected on petitioner's books through its investment account. During 1939, the tax year, petitioner purchased with its own funds for $48,061, ninety-four of its outstanding bonds and credited them to its investment account. During this same year, petitioner paid into the sinking fund $5,000, with which sum the trustee purchased from others six $1,000 bonds and destroyed them.

Respondent determined that in this year petitioner realized taxable net income in the amount of $45,939 from the purchase of its bonds, which sum was the difference between the par value of the bonds and their cost and the Tax Court sustained respondent.

The Tax Court found as a fact that petitioner purchased the bonds in question for retirement and this finding is assailed by petitioner on the ground that there is no substantial evidence to support it.

Petitioner's treasurer, the only witness called, testified that for several years the company had been buying securities as a part of its business and in so doing, purchased its own bonds. He stated that all of the bonds issued by the company, including those purchased by it, were set up on its books as a liability and so remained until they were turned over to the trustee and destroyed. He said the company bonds were bought at favorable prices and for the interest yield, and also for the purpose of providing "a cushion for another period which we know is coming after this war, to enable us to continue paying the interest, if possible, on the remaining outstanding bonds." He said that the ninety-four bonds purchased in 1939 were put in the investment account and were still there and that the company paid the specified rate of interest upon all of its bonds, including those purchased, until their destruction by the trustee. He also stated that another reason for purchasing the bonds was to enable the company to exercise some control over foreclosure proceedings or to prevent such proceedings in case of a depression or a default on the payment of interest or sinking fund. The witness stated that at the time the bonds were purchased that, so far as he knew, petition-

er had no intention of immediately delivering them to the trustee for cancellation.

■ The true character of petitioner's investment account, as it affects the purchase of its mortgage bonds, is a question of fact, to be determined in the light of not only the outward or manifested intention of petitioner, but also by the way in which its account was actually managed and the uses to which the purchased bonds would, in the light of the surrounding circumstances, be put. The appellate court, when determining whether or not a decision of the Tax Court is supported by substantial evidence, must consider the evidence as a whole and all reasonable inferences to be drawn therefrom. Giving full weight to the oral testimony upon which petitioner relies in the light of the other evidence, we cannot say it was indisputable.

The trust indenture provided that the trustee could use the sinking fund to purchase the company bonds at the lowest price at which they were offered and petitioner was primarily interested in the retirement of its bonds at the lowest possible cost to it. In any year in which bonds owned by others were not offered to the trustee at less than par, petitioner could prevent the retirement of bonds by lot at par by offering to the trustee at less than par bonds it owned. During the period in which petitioner was purchasing its bonds, several blocks of them were delivered to the trustee for cancellation and the trustee paid petitioner for them out of the sinking fund.

■ The Tax Court, from a consideration of the entire evidence, could infer properly that the bonds here in question, notwithstanding the testimony of petitioner's treasurer, were purchased for the purpose of retirement. Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352.

Petitioner urges as a matter of law that it was not taxable on the income in question, because no gain was realized by it out of the purchase of its bonds during the tax year.

By the Internal Revenue Code, § 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a) " 'gross income' includes * * * income derived from any source whatever." Treasury regulations under all Internal Revenue Acts to and including the Revenue Act of 1932, interpreted Section 22(a) to mean that a corporation realized income out of the purchase and retirement of its bonds at less than the issuing price, to the extent of the difference between the selling price and the purchase price of the obligation. The phrase of the regulation with which we are concerned reads "purchased and retired." In the cases of United States v. Kirby Lumber Co., 284 U.S. 1, 3, 52 S.Ct. 4, 76 L.Ed. 131; Helvering v. American Chicle Co., 291 U.S. 426, 431, 54 S.Ct. 460, 78 L.Ed. 891, the Supreme Court was considering the validity of the regulations containing the above phrase and concluded that they correctly interpreted Section 22 (a) of the Act. The language of Section 22(a) remained the same under the Revenue Act of 1934, but the Treasury Regulations interpreting that Section eliminated the phrase from the earlier regulations "and retired," making the fact of acquisition of bonds for retirement as the identifiable event for the purpose of ascertaining whether income had been realized or a loss had been sustained. Treasury Regulation 103, Section 19.22(a)-18. Petitioner insists that the amended regulation is contrary to the statute and that the Kirby and Chicle cases are not authority for its validity.

■ Since taxation is a practical matter, dealing with realities, the concept that a corporation realizes a taxable gain or sustains a taxable loss on the purchase of its bonds for retirement arises from the fact that during the tax year the taxpayer has either enjoyed a benefit or suffered a detriment measurable in money. Accordingly where there is neither benefit nor detriment realized or sustained by the taxpayer within the taxable year, this concept has no application. It is true that the mechanics of retiring the bonds here in question had not been completed during the tax year. None of the bonds had been surrendered to the trustee for redemption or cancellation, and petitioner was continuing the payment of interest on them to the trustee and receiving returned interest. But, by the purchase of the bonds a benefit inured to petitioner during the tax year which was measurable in money. In realty, by its purchases, petitioner had relieved itself of the obligation to pay the bonds at maturity, and could use them during the tax year to control the price at which offered bonds were redeemable out of the sinking fund. As we view it, under the facts of this case, petitioner realized income under the broad provisions of Section 22(a) and the ques-

tioned regulation contained a correct statement of the law. Montana, Wyoming & Southern R. Co. v. Commissioner of Internal Revenue, 3 Cir., 77 F.2d 1007; Dow Chemical Co. v. Kavanagh, 6 Cir., 139 F.2d 42; American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., D.C., 19 F.Supp. 234; Garland Coal & Mining Co. v. Helvering, 64 App.D.C. 144, 75 F.2d 663.

The order of the Tax Court is affirmed.